**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-059**

**Filing Date: April 24, 2017**

**Docket No. 34,576**

**ARTURO VALERIO,**

       **Plaintiff-Appellant,**

**v.**

**SAN MATEO ENTERPRISES, INC.,**

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

Frederick H. Sherman
Deming, NM

for Appellant

Holt Mynatt Martìnez P.C.
Casey B. Fitch
Las Cruces, NM

for Appellee

**OPINION**

**VANZI, Chief Judge.**

**{1}** Plaintiff Arturo Valerio appeals from the district court's final order dismissing his complaint pursuant to Rule 1-041(B) NMRA. Valerio raises six issues on appeal: (1) whether the district court erred in denying his motion to withdraw an admission he made in discovery; (2) whether the district court erred in denying joinder of real parties in interest and therefore lacked jurisdiction over the matter; (3) whether the district court erred in granting partial summary judgment on three of Valerio's claims; (4) whether the district court erred by dismissing claims not raised in Defendant San Mateo Enterprises, Inc.'s (San Mateo) motion for summary judgment; (5) whether the district court erred in excluding

certain evidence during trial; and (6) whether the district court erred in not modifying the scheduling order so as to permit Valerio to amend his complaint. We affirm.

**BACKGROUND**

{2}     This lawsuit stems from the parties' 2012 contract for the purchase and sale of one million pounds of dehydrated chile peppers. Valerio grows and harvests chile peppers. San Mateo is a dehydration chile plant that purchases, processes, and dehydrates different varieties of chile. Pursuant to the parties' contract and practice, Valerio would deliver raw chile peppers to San Mateo, which would then wash, dehydrate, weigh, and pay for them.

{3}     It is San Mateo's practice to issue truck tickets to every incoming load of chile. The ticket records the "name of the grower, type of chile, the number of full boxes received, and empty boxes sent to the grower." San Mateo provides each grower with specialized empty boxes for the transportation of the chile peppers, which it tracks on paperwork titled "In/Out Log." The In/Out Log records "the ticket numbers and dates of deliveries received by [the] drivers, the number of empty boxes sent with the drivers, number of full boxes received . . . , and the type of [chile] peppers delivered." After processing and dehydration, San Mateo provides the grower an estimated per-box dehydrated weight for prior deliveries. This latter weight is an estimate provided as a courtesy to help growers track picking costs. Because the cost of transportation is borne by each grower, it is in the grower's financial interest to transport the chile peppers contracted for in as few trips as possible.

{4}     According to Valerio, he was told that the weights listed on the In/Out Logs after the chile peppers were dehydrated were accurate, rather than merely estimates as claimed by San Mateo. In 2012 Valerio provided chile seeds to farmers to grow the chile peppers; he then returned at harvest time to pick, transport, and deliver the chile. Throughout the 2012 picking season, Valerio made periodic payments to the farmers based on the weights indicated on the In/Out Logs. Valerio contends that San Mateo knew that he was relying on these weights in order to pay his debts to the farmers.

{5}     San Mateo's records reflect that, prior to the beginning of the 2012 season, Valerio received advance payments totaling $90,250. Valerio did not dispute below that he received these advance payments. San Mateo's records further reflect that these advance payments were subtracted from the last payment it made to Valerio on December 26, 2012, reducing that payment in half.

{6}     Toward the end of the 2012 season, Valerio's harvest ran out and he started purchasing chile peppers grown and picked by other farmers. Those chile peppers were delivered to Valerio in sacks at a weigh station in Mexico, where he was able to obtain weight slips indicating their raw weight. The weighing process was as follows: a truck would be weighed with San Mateo's empty boxes already on it, the truck would then drive off the scale, the boxes on it would be filled with chile peppers delivered to the weigh station by the farmers who grew and picked them, and the truck would then be weighed again.

2

**{7}** The Mexican weight tickets were the only records of raw weight for any of the chile peppers Valerio delivered to San Mateo. Valerio did not weigh any of his own harvest because the chile peppers were loaded onto the trucks in the fields and into empty boxes as they were picked. San Mateo also did not weigh any of the raw chile peppers it received because payment was to be determined based on dehydrated weights only. The parties disagreed as to whether or not dehydrated weight can be determined from raw weight.

**{8}** Also toward the end of the 2012 season, San Mateo stopped providing Valerio with weights on the In/Out Logs. Valerio asserts that he called San Mateo because he needed this information in order to pay some of his farmers and that he told San Mateo the boxes were averaging over 200 pounds each. When he received the last payment, Valerio's bookkeeper—who was unaware of the advance payments— calculated that the amount paid actually translated to an average of 81 pounds per box instead of 200 pounds per box. This lawsuit resulted from that discrepancy.

**{9}** Valerio's complaint alleged debt and money due, breach of contract, breach of the covenant of good faith and fair dealing, fraud, and unconscionable trade practices. Valerio voluntarily dismissed the unconscionable trade practices claim. The district court subsequently granted San Mateo's motion for summary judgment on all but the breach of contract claim, which was tried to the bench in October 2014. At the conclusion of Valerio's case, San Mateo moved for judgment on the merits pursuant to Rule 1-041(B). The district court granted San Mateo's motion, finding that Valerio did not admit any contract into evidence or otherwise establish the elements of an enforceable agreement, and that he had not shown any evidence of damages entitling him to relief. This appeal followed.

**DISCUSSION**

**{10}** As a preliminary matter, San Mateo argues that Valerio waived appellate review of any and all issues in this case because Valerio does not challenge the district court's dismissal of his complaint under Rule 1-041(B). Rule 1-041(B) provides, in relevant part, as follows:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 1-052 NMRA.

**{11}** At the close of Valerio's case in chief, San Mateo moved for dismissal and the motion was granted. San Mateo now asserts that waiver occurred because "[n]owhere in his

3

brief does Valerio seek review of the [d]istrict [c]ourt's final ruling dismissing the case with prejudice under Rule 1-041[.]"

**{12}** San Mateo misunderstands the role that reversible error plays in our appellate review process. A party is not required to challenge the merits of the lower court's ultimate decision for this Court to address alleged reversible errors along the way; if this Court finds that reversible error occurred at any point, we will set aside the judgment. *See Anderson v. Welsh*, 1974-NMCA-120, ¶ 28, 86 N.M. 767, 527 P.2d 1079 ("All error is not reversible. Reversible error occurs where the substantial rights of the adverse party have been affected. Otherwise no judgment shall be reversed by reason of such error." (citation omitted)). Here, Valerio asserts that, leading up to and during the trial, the district court committed various reversible errors as stated above. Under these circumstances, with regard to the district court's dismissal of the action, our rules of appellate procedure merely require that the brief in chief include "a precise statement of the relief sought[,]" which it does. Rule 12-213(A)(5) NMRA (current version at Rule 12-318(A)(5) NMRA). Consequently, we proceed to address the issues raised by Valerio on appeal.

**Motion to Withdraw Admission**

**{13}** Valerio's first argument on appeal is that the district court erred in denying his motion to withdraw an admission he made in response to a written discovery request. Specifically, San Mateo's request for admission number two asked Valerio to either admit or deny whether "all payments from San Mateo . . . to . . . Valerio in the year 2012 accurately reflect the amounts owed to . . . Valerio based upon the weight of the chile delivered after dehydration with 3%-7% moisture." Valerio responded to this request for admission by placing an "X" next to the option for "Admit" and further stating that "[t]he last payment failed to account for approximately 14 loads of chile that . . . Valerio delivered." More than a year later and after the close of discovery, Valerio filed a motion seeking the court's permission to withdraw this admission as "improvident" and to allow an amended "truthful response" to the request. In particular, Valerio sought to withdraw the admission "in order to allow [Valerio] to prove that [San Mateo had] not accounted for the chile purchased and [had] underpaid [Valerio.]" In other words, Valerio sought to change his admission from the 14 loads to challenging the amount paid for the full one million pounds of chile peppers that the parties had contracted for. After a hearing, the district court denied Valerio's motion. At trial, the district court accepted the original admission as established and limited Valerio's claim to the 14 loads of chile alleged in the admission not to have been paid for.

**{14}** Under Rule 1-036(B) NMRA, the district court "may permit withdrawal or amendment [of an admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." As the language of the rule makes clear, the burden is on the party opposing withdrawal—in this case San Mateo—to "satisfy the court" that it would be prejudiced by

4

the amendment. *Id*. Moreover, when interpreting the federal counterpart to our rule, federal courts have held that the prejudice contemplated is not simply that the party would have to prove the fact previously admitted, but that it "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *Brook Vill. N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982).

**{15}**    In its oral ruling denying Valerio's motion, the district court held that San Mateo would be prejudiced if withdrawal was allowed. The court noted that the case was already on a trial docket, discovery was closed, and the prejudice to San Mateo would be too great as it would have to conduct burdensome last-minute discovery with respect to the Mexican weight tickets, including deposing foreign witnesses. We review this decision for abuse of discretion. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985) (holding that the denial of a motion to withdraw or amend an admission under the substantially identical Fed. R. Civ. P. 36(b) is reviewed for abuse of discretion); *Century Bank v. Hymans*, 1995-NMCA-095, ¶ 12, 120 N.M. 684, 905 P.2d 722 (holding that authority interpreting a "substantially identical" federal rule of civil procedure "can be persuasive in the absence of contrary New Mexico precedent").

**{16}**    "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Here, the district court's ruling that San Mateo would be prejudiced was supported by the fact that the trial was two weeks away, discovery was closed and, more importantly, that the discovery would have to be conducted in a foreign country. Even if San Mateo would not have suffered prejudice, however, reversal on this issue is not warranted because any alleged error was harmless.

> In civil litigation, error is not grounds for setting aside a verdict unless it is inconsistent with substantial justice or affects the substantial rights of the parties. An error is harmless unless the complaining party can show that it created prejudice. We compel the reversal of errors for which the complaining party provides the slightest evidence of prejudice and resolve all doubt in favor of the complaining party. [At the same time, w]e will not set aside a judgment based on mere speculation that [the error] influenced the outcome of the case.

*Kennedy v. Dexter Consol. Sch.*, 2000-NMSC-025, ¶¶ 26-27, 129 N.M. 436, 10 P.3d 115 (internal quotation marks and citations omitted). In his brief in chief, Valerio claims that he was prejudiced by the denial of his motion because "thereafter [San Mateo's] motion for summary judgment was granted as to all but one issue as supported largely by [Valerio's] admissions." Our review of the record on appeal reveals that this assertion is incorrect and misconstrues the district court's rulings with regard to San Mateo's summary judgment

5

motion. While the district court relied on various other admissions made by Valerio, it did not rely on the admission here at issue, i.e., Valerio's response to request for admission number two, for the simple fact that San Mateo itself did not rely on that admission in its motion for summary judgment. The district court granted summary judgment on Valerio's claims for debt and money due, breach of the covenant of good faith and fair dealing, and fraud as a matter of law, and denied summary judgment as to the breach of contract claim because there existed a question of fact as to how much chile was delivered and how much was paid for. Valerio offers no argument as to how the dismissed claims would have survived summary judgment as a matter of law had he been allowed to withdraw this particular admission, which was based solely on the specific number of loads of chile peppers Valerio delivered to San Mateo in 2012. Accordingly, the district court's order denying Valerio's motion to withdraw his admission, thereby limiting the dispute to the last 14 loads, was of no consequence to its decision to grant in part San Mateo's motion for summary judgment.

**{17}** In his reply brief, Valerio further argues that he was prejudiced because his "admissions conceded and limited the core elements and extent of damages[,]" and that "[a]llowing the admissions to be withdrawn[] would have permitted for the action to be resolved on the merits for more than just the 14 loads of chile." However, Valerio presents no argument as to how he would have been able to prove breach of contract and damages with respect to all loads delivered in 2012 when he was unable to do so with respect to the last 14 loads, and Valerio has directed this Court to no evidence in the record on appeal to suggest that he would have been able to contradict San Mateo's evidence of the dehydrated weight of *any* of his chile in 2012. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). We refuse to speculate on the issue of prejudice, *Kennedy*, 2000-NMSC-025, ¶ 27, and hold that Valerio has failed to demonstrate reversible error on appeal in this context.

**Lack of Jurisdiction**

**{18}** Valerio next argues that the district court's dismissal should be reversed for lack of jurisdiction because it denied joinder of real parties in interest. Specifically, Valerio claims that his business partner and bookkeeper, Elisabet Sanchez, and the several farmers who raised the crops of chile peppers here at issue were indispensable parties who should have been joined by San Mateo. Valerio offers virtually no support for this argument. Additionally, more than twenty-five years ago, our Supreme Court held that "the test of indispensability [is not] jurisdictional" and overruled precedent to the contrary. *C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc*, 1991-NMSC-049, ¶ 8, 112 N.M. 89, 811 P.2d 899; *see also Sims v. Sims*, 1996-NMSC-078, ¶ 53, 122 N.M. 618, 930 P.2d 153 ("The absence of an indispensable party in New Mexico is no longer considered . . . a jurisdictional defect."). The district court did not lack jurisdiction in this matter.

**Partial Summary Judgment**

**{19}** Valerio's third argument on appeal is that the district court "erred in granting summary judgment where facts were disputed." Valerio argues that the district court erred (1) in failing to recognize a fiduciary relationship between the parties, and (2) in failing to hold that there were genuine issues of material fact as to whether San Mateo's records were accurate. We construe these arguments as challenges of the district court's summary dismissal of his claims for debt and money due and breach of the implied covenant of good faith and fair dealing.

**{20}** Valerio also asserts that there were genuine issues of material fact with regard to "detrimental reliance on [San Mateo's] representations as to the weights before and after dehydration[.]" Although unclear, we construe this argument as a claim for equitable estoppel and decline to address it because it was not raised below. *See Capo v. Century Life Ins. Co.*, 1980-NMSC-058, ¶ 16, 94 N.M. 373, 610 P.2d 1202 (listing the essential elements of equitable estoppel, including "reliance upon the conduct of the party estopped . . . and . . . action based thereon of such a character as to change [one's] position prejudicially"); *McCauley v. Tom McCauley & Son, Inc.*, 1986-NMCA-065, ¶ 73, 104 N.M. 523, 724 P.2d 232 (holding that the plaintiff was barred from raising equitable estoppel for the first time on appeal).

**{21}** Valerio further appears to argue that there were genuine issues of material fact as to "the meanings of terms of the contract, specifically the accounting practices and dehydration process." Given that Valerio's breach of contract claim survived summary judgment, there is no adverse ruling to review or actual relief that can be afforded, so we decline to address this issue. *See Pernell v. Pernell*, 1979-NMCA-008, ¶ 6, 92 N.M. 490, 590 P.2d 638 (noting that New Mexico appellate courts do not decide questions if no actual relief can be afforded).

**{22}** "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.* "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241 (citation omitted). "[T]he party opposing summary judgment has the burden to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact." *Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 10, 146 N.M. 179, 207 P.3d 1156 (internal quotation marks and citation omitted).

7

## 1.    Fiduciary Duty

**{23}**    With respect to Valerio's argument that the district court erred in granting summary judgment to San Mateo on the fiduciary duty claim, we disagree. The complaint alleged that Valerio had been "unable to determine the debt and money due without a proper accounting of actual delivery weights by [San Mateo]." The complaint further alleged that Valerio had requested but had been denied such an accounting. In his response to San Mateo's motion for summary judgment, Valerio argued that San Mateo had "admitted [that it] was acting as a fiduciary for [Valerio]" and had an "obligation . . . to account as plead." Although unclear, we construe Valerio's claim for debt and money due as a claim for breach of fiduciary duty. *See Fate v. Owens*, 2001-NMCA-040, ¶ 25, 130 N.M. 503, 27 P.3d 990 ("[A] fiduciary[] is required to fully disclose material facts and information relating to [the fiduciary relationship] . . . even if the [one to whom the duty is owed] ha[s] not asked for the information. . . . The duty of disclosure is a hallmark of a fiduciary relationship." (internal quotation marks and citations omitted)).

> We determine whether a particular defendant owes a [fiduciary] duty to a particular plaintiff as a question of law, and as such, de novo. . . . [A] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.

*Moody v. Stribling*, 1999-NMCA-094, ¶¶ 17-18, 127 N.M. 630, 985 P.2d 1210 (internal quotation marks and citations omitted). Relationships where a fiduciary duty has been recognized include those between insurer and insured, testator and beneficiary, investment advisor and client, physician and patient, attorney and client, real estate broker and principal, and business partners. *See id.* ¶ 17. "Because a fiduciary owes the highest degree of loyalty to those who are entrusted to him or her, contracts entered into between a fiduciary and beneficiary are suspect." *Id.* ¶ 33.

**{24}**    On the other hand, "a buyer-seller relationship [ordinarily] is not fiduciary in nature[.] . . . An essential feature and consequence of a fiduciary relationship is that the fiduciary becomes bound to act in the interests of its beneficiary and not itself. Obviously, this dynamic does not inhere in the ordinary buyer-seller relationship." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 56, 133 N.M. 669, 68 P.3d 909 (alterations, internal quotation marks, and citation omitted); *see Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 44, 115 N.M. 690, 858 P.2d 66 (holding that a commercial agreement, "albeit heavily tilted in favor of [the defendant]," does not by itself give rise to a fiduciary relationship), *limited on other grounds by Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 2, 147 N.M. 157, 218 P.3d 75.

**{25}**    Valerio's only argument as to why the contract at issue in this case should be treated as creating a fiduciary duty on the part of San Mateo is that he had to trust San Mateo to

accurately record and report the dehydrated weights of the chile peppers he delivered. Valerio cites no authority recognizing a fiduciary relationship under similar circumstances, and we assume that none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that, absent cited authority to support an argument, we assume that no such authority exists).

**{26}** We further agree with the California Supreme Court that one party to a contract's inability to monitor the other party's performance of its contractual obligations and the resultant need to trust that the same will be performed as agreed are insufficient, without more, to create a fiduciary relationship. In *City of Hope National Medical Center v. Genentech, Inc.*, for example, the court declined to find a fiduciary relationship between a biotech company and a medical research center premised on the center's need to rely on the truth of the company's representations regarding royalty payments in exchange for exclusive rights of the center's patents and other property. 181 P.3d 142, 149-50 (Cal. 2008). The court observed that a car owner "must rely on the truth of the garage operator's representations about what repairs are needed and how they should be done . . . [but that] no court has ever held or suggested, as far as we know, that in this situation the garage operator owes fiduciary duties to the car owner." *Id.* at 152. Similarly, in *Wolf v. Superior Court*, the court refused to recognize a fiduciary relationship between an author and a company where the author had assigned the rights to a novel to the company in exchange for contingent compensation from its commercial exploitation, while the company retained exclusive control over all financial records and information pertaining to any revenue received therefrom. 130 Cal. Rptr. 2d 860, 864 (2003) ("Every contract requires one party to repose an element of trust and confidence in the other to perform."). Likewise, without more we decline to impose the onerous duties of a fiduciary relationship in the typical buyer-seller context.

**{27}** In a similar vein, Valerio argues that San Mateo was his fiduciary because it acted as a bailee with regard to the chile peppers he delivered. This argument was not preserved in the district court and was made for the first time in Valerio's reply brief. As such, we refuse to address it on appeal. *See Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 30, 123 N.M. 170, 936 P.2d 852 (rejecting liability theories not presented to the district court in response to the defendant's motion for summary judgment and raised for the first time in the plaintiffs' reply brief).

### 2.     Good Faith and Fair Dealing

**{28}** We turn next to whether the district court erred in granting summary judgment to San Mateo on Valerio's claim for breach of the implied covenant of good faith and fair dealing. "The breach of [the implied covenant of good faith and fair dealing] requires a showing of bad faith or that one party wrongfully and *intentionally* used the contract to the detriment of the other party." *Cont'l Potash, Inc.*, 1993-NMSC-039, ¶ 64 (emphasis added). Negligent conduct is insufficient to constitute breach of the covenant; rather, the requisite showing is of "wrongful and intentional affronts to the other party's rights, or at least affronts where the breaching party is consciously aware of, and proceeds with deliberate disregard for, the

9

potential of harm to the other party." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 31, 118 N.M. 203, 880 P.2d 300, *limited on other grounds by Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 7, 135 N.M. 106, 85 P.3d 230. Therefore, in order to defeat summary judgment on this count, Valerio had to present some evidence that the weights San Mateo reported to him either prior to or at the time of payment were not only wrong, but intentionally so. Based on the evidence discussed below, we conclude that Valerio did not meet this burden on summary judgment.

**{29}** Before Valerio had to make any showing as to factual issues, San Mateo, as the movant, had the burden of establishing the absence of a material issue of fact and making a prima facie showing that it was entitled to summary judgment as a matter of law. *See Goodman v. Brock*, 1972-NMSC-043, ¶ 8, 83 N.M. 789, 498 P.2d 676. "By a prima facie showing is meant such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.*

**{30}** San Mateo's motion for summary judgment asserted that there was no evidence of bad faith on its part or that it made any misrepresentations to Valerio. The motion was supported by documentary evidence demonstrating that during 2012, (1) the parties had a contract for one million pounds of dehydrated chile; (2) Valerio delivered a total of 5,170 boxes of raw chile; (3) the total dehydrated weight of the chile delivered equaled 941,772 pounds; (4) Valerio's average dehydrated weight per box was 182 pounds; (5) prior to the beginning of the season, Valerio received advances in the amount of $90,250; (6) Valerio was paid within 30 days of each delivery for all chile peppers delivered through December 20, 2012; and (7) the last payment he received on December 26, 2012, equaled the remaining amount owed to him minus the amount of the advances he had previously received.

**{31}** San Mateo further provided the affidavit of its secretary and shareholder of more than twenty years, Rosie Lack, who stated that she had personal knowledge of its operations; that San Mateo does not weigh raw chile as raw weight is immaterial; that each grower's dehydrated chile is weighed in 1000-pound batches on scales certified by the New Mexico Department of Agriculture; that these weights are recorded in its documentation; and that Valerio was paid accordingly. Lack's affidavit further provided that, in addition to providing growers with exact dehydrated weights at the time of payment, San Mateo tries to provide estimated average box weights on the paperwork it uses to track its boxes throughout the season as a courtesy to help growers estimate picking costs. San Mateo's motion also included Valerio's responses to requests for admissions and answers to interrogatories, in which he admitted that he did not know—and had no independent records of—the dehydrated weight of the chile peppers he delivered to San Mateo in 2012. This evidence was sufficient for San Mateo to meet its burden of making a *prima facie* showing of no misrepresentation on its part, intentional or otherwise.

**{32}** In his response, Valerio produced documentary evidence of the raw weight of some of the chile peppers he delivered to San Mateo, which the district court accepted as sufficient to raise a factual issue with respect to dehydrated weight as evidenced by its denial of

summary judgment on Valerio's breach of contract claim. Relevant to the issue of bad faith, Valerio asserted that Lack verbally told Valerio that the last 14 loads averaged over 200 pounds per box after dehydration, but the payment Valerio received for these boxes translated to an average of 81 pounds per box; the apparent implication being that, given the great disparity in weights, San Mateo must have intentionally misrepresented the dehydrated weight of these loads of chile peppers. In support of these assertions, Valerio provided the affidavit of Sanchez, in which she offered no explanation as to how she reached the number of 81 pounds per box, such as whether or not the deduction of $90,250 in advances was taken into account. Without some evidence that her calculation was correct, Valerio was not entitled to any inference based on this number. *See Goodman*, 1972-NMSC-043, ¶ 10 ("The inferences, which the party opposing the motion for summary judgment is entitled to have drawn from all the matters properly before and considered by the trial court, must be reasonable inferences.").

**{33}** Further, in his response to San Mateo's request for admission number nineteen, which was included with the motion for summary judgment, Valerio stated, consistent with San Mateo's documentation, that he was paid based on an average dehydrated weight of 182 pounds per box for all boxes delivered in 2012. Valerio's response offered no argument or evidence to support the inference that Lack's alleged statement that the last 14 loads averaged 200 pounds per box was inconsistent with an ultimate average of 182 pounds per box when all 5,170 boxes were taken into account. As such, Valerio's evidence did not support an inference of bad faith by San Mateo. *See id.*; *see also Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 29, 294 P.3d 1276 ("To survive a motion for summary judgment, the non-moving party may not rely upon mere allegations, but rather must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks and citation omitted)).

**{34}** In her affidavit, Sanchez further stated that Lack told Valerio that the weights provided on the paperwork for tracking San Mateo's boxes were accurate rather than estimates with the understanding that Valerio would use these weights to pay the farmers who produced the chile peppers he delivered to San Mateo, the apparent implication being that Lack knowingly caused him financial harm. This testimony likewise does not support an inference of bad faith. During the hearing on San Mateo's motion, Valerio argued that Lack's estimates *under*stated the weight of the chile peppers received. Therefore, even if Valerio relied on these numbers to pay the farmers, doing so was not to his financial detriment, as his payments were lower—not higher—than what was due.

**{35}** Lastly, during the hearing on the motion, Valerio argued that San Mateo should have either utilized a weight scale with a printer and produced a ticket demonstrating the dehydrated weight of his product, or taken a picture of the screen of its weight scale each time it weighed his product. However, "[m]erely asserting that [San Mateo] failed to take action that might have been beneficial to [Valerio] does not show bad faith." *Cont'l Potash, Inc.*, 1993-NMSC-039, ¶ 66.

**{36}** As the non-moving party, the burden was on Valerio to come forward with admissible evidence showing that a material disputed factual issue existed with respect to bad faith. *See Archunde v. Int'l Surplus Lines Ins. Co.*, 1995-NMCA-110, ¶ 22, 120 N.M. 724, 905 P.2d 1128. Finding no evidence in the record on appeal from which to reasonably infer bad faith, we affirm the district court's partial grant of summary judgment on this issue.

**Summary Judgment Regarding Claims Not Challenged in Motion**

**{37}** Valerio contends that the district court erred in granting summary judgment on issues that were not addressed in San Mateo's motion. Specifically, Valerio asserts that the district court summarily dismissed a claim of unconscionability/adhesion and a claim of conversion. There is nothing in the record on appeal, however, to support Valerio's assertion; rather, the record establishes that these claims were not before the district court, and thus no summary judgment could have been, or was, entered with respect to them.

**{38}** Specifically, during docket call held two days before the hearing on the motion for summary judgment, the district court rejected Valerio's draft pretrial order because it contained these two new theories of liability. In so doing, the court unequivocally stated that the time for amending the pleadings had passed and that no new or additional theories would be permitted (as discussed in more detail below, this ruling was not error). Contrary to the court's clear directive, the next day Valerio filed a motion to amend the complaint seeking to add these two theories. The court orally denied this motion on the day of trial, stating that it had previously held that no amendments would be permitted. It follows that the court had not previously dismissed these claims on summary judgment.

**Exclusion of Evidence**

**{39}** Valerio's fifth claim on appeal is that the district court erred in excluding Lack's deposition testimony, taken in her capacity as San Mateo's corporate designee under Rule 1-030(B)(6) NMRA, and the Mexican weight tickets. While the brief in chief also states that the weight tickets from the United States customs scales were erroneously excluded, Valerio offers no argument or authority in support of this assertion; therefore, we do not address it. *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

**{40}** At trial, Valerio moved into evidence portions of Lack's deposition, and San Mateo objected in part because Lack was present and available to testify. The district court ruled that the objection would be sustained unless Valerio waited until Lack testified. Rather than call Lack as his next witness, however, Valerio rested his case.

**{41}** Pursuant to Rule 1-032(A) NMRA,

12

[a]t the trial . . . any part or all of a deposition, so far as admissible under the Rules of Evidence applied *as though the witness were then present and testifying*, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: . . . (2) the deposition of . . . a person designated under Subparagraph (6) of Paragraph B of Rule 1-030 . . . to testify on behalf of a public or private corporation, partnership or association . . . which is a party *may be used by an adverse party for any purpose*[.]

(Emphasis added.) Given the plain language of the rule that at trial an adverse party may use the deposition of a corporate party's Rule 1-030(B)(6) designee for any purpose and "as though the witness were then present and testifying," the district court's ruling was clearly erroneous. Rule 1-032(A); *see Crimm v. Missouri Pac. Ry. Co.*, 750 F.2d 703, 708-09 (8th Cir. 1984) (holding that, under the substantially identical language of Fed. R. Civ. P. 32(a)(2), the trial court erred in excluding the deposition of the opposing party's managing agent because the deponent "was to be called later in the trial").

**{42}**    On appeal, San Mateo argues that the error was harmless. We have previously held that "the complaining party on appeal must show the erroneous . . . exclusion of evidence was prejudicial in order to obtain a reversal." *Cumming v. Nielson's, Inc*., 1988-NMCA-095, ¶ 28, 108 N.M. 198, 769 P.2d 732. In response, Valerio asserts that he was forced to wait to use the deposition testimony until Lack "was called to testify. . . . However, when she was not called to testify, her deposition was not permitted to be admitted, to the substantial injustice of [Valerio's] case." Valerio fails to explain why *he* did not call Lack to the stand in his case in chief. To the extent his position is that he was precluded from doing so by the district court, there is nothing in the record on appeal to support this suggestion.

**{43}**    In interpreting the parallel Fed. R. Civ. P. 32(a)(2), "[f]ederal appellate courts have held that the exclusion of deposition evidence is harmless if the material matters covered in the deposition *are covered, or could have been covered*, at trial." *Crimm*, 750 F.2d at 709 (emphasis added). We are persuaded by this precedent. *See Hymans*, 1995-NMCA-095, ¶ 12 (holding that authority interpreting a "substantially identical" federal rule of civil procedure "can be persuasive in the absence of contrary New Mexico precedent"). Therefore, we hold that, because (1) Valerio could have covered the excluded testimony by calling Lack to the stand and questioning her about it, and (2) he could have introduced the deposition testimony at issue at that time per the court's ruling, the error was harmless, and reversal on this ground is not warranted.

**{44}**    As to the Mexican weight tickets, Valerio argues that they should have been admitted as his business records. San Mateo contends that this issue was not preserved for appellate review. Our review of the record reveals that at trial, Valerio argued unsuccessfully that these weight tickets should be admitted because they were kept in the regular course of his business by Sanchez, their custodian. Therefore, we hold that the issue was preserved and

13

review for abuse of discretion. *Roark v. Farmers Grp., Inc.*, 2007-NMCA-074, ¶ 20, 142 N.M. 59, 162 P.3d 896.

**{45}** It is undisputed that the Mexican weight tickets were not generated or created by Valerio's business; rather, they were issued by a different entity—a weigh station located in Mexico and used by Valerio to weigh some of the chile peppers he delivered to San Mateo in 2012. Valerio cites several cases for the proposition that the witness testifying for the purpose of laying a foundation for the business records exception need not have created the record at issue. However, Valerio offers no authority to support his position that the business records exception applies to records not created by the *business* to which the exception is sought to be applied. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. Rule 11-803(6) NMRA states that both keeping *and making* the records at issue must be a regular practice of *the same* business. As such was not the case with respect to the Mexican weight tickets, we hold that the district court did not abuse its discretion in excluding these documents.

**Scheduling Order**

**{46}** Valerio's final argument on appeal is that "the district court committed reversible error in allowing manifest injustice by refusing to modify the scheduling order to promote fairness." San Mateo takes the position that this issue was not preserved below. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. Our review of the record on appeal reveals that Valerio preserved this issue when he raised it during docket call on October 6, 2014, at which time Valerio argued that he should be permitted to amend the complaint to add claims revealed during discovery. Valerio argued to the district court that, because the deadline for amendments of the pleadings was shorter than the discovery deadline, the scheduling order unreasonably precluded any claims discovered during that process. The district court rejected this argument as "misleading" because discovery had closed two months prior, stating that Valerio should not have waited until docket call to seek amendment. We review this denial of Valerio's oral motion to modify the scheduling order for abuse of discretion. *See Buke, LLC v. Cross Country Auto Sales, LLC*, 2014-NMCA-078, ¶ 62, 331 P.3d 942.

**{47}** Pursuant to Rule 1-016(B) NMRA, "[a] scheduling order shall not be modified except by order of the court upon a showing of good cause." Valerio's counsel argued below that, by the time he was retained in this matter, while discovery was still open, the deadline to amend the pleadings had already passed, partly due to the court's delay in ruling on his previous counsel's motion to withdraw. Counsel offered no explanation, however, as to why he then waited until two months after the close of discovery and only fifteen days before the trial date to seek modification. Given that the district court was offered no cause—good or otherwise—for this delay, we hold that it did not abuse its discretion in refusing to modify

14

its scheduling order only days before trial. *See Reaves v. Bergsrud*, 1999-NMCA-075, ¶ 13, 127 N.M. 446, 982 P.2d 497 ("An abuse of discretion occurs when the [district] court's ruling is against the facts, logic, and circumstances of the case or is untenable or unjustified by reason.").

**{48}** We are mindful of the fact that, in effect, the district court's ruling was a denial of a request to amend the complaint, as well as of our prior holding that, "even if a party does not consent to amendment, the [district] court is required to allow it freely if the objecting party fails to show he or she will be prejudiced." *Crumpacker v. DeNaples*, 1998-NMCA-169, ¶ 17, 126 N.M. 288, 968 P.2d 799. In the present case, San Mateo did not consent to the amendment below, but the district court did not explicitly require a showing of prejudice. We nevertheless affirm because *Crumpacker* further held that a denial may be premised on an "apparent . . . reason—such as undue delay," *id.* ¶ 18 (internal quotation marks and citation omitted), and Valerio does not develop on appeal a challenge to the district court's decision on this basis.

**CONCLUSION**

**{49}** For the foregoing reasons, we affirm the district court's ruling in favor of San Mateo.

**{50}** **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**M. MONICA ZAMORA, Judge**