This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37586**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TYLER T. ROMERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant Tyler Romero (Defendant) appeals his convictions for felony criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963), and aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2 (1963). Defendant contends that the district court erred in denying his motion for a continuance and challenges the sufficiency of the evidence supporting his convictions. We affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the relevant historical facts of this case. We reserve discussion of specific facts where necessary to our analysis.

**{3}** Following a verbal altercation with his ex-girlfriend, Felicia Gutierrez (Gutierrez), outside of a bar in Clovis, New Mexico, Defendant drove his vehicle toward Gutierrez and her friend, Skylar Price (Price), who were standing next to Price's vehicle. Defendant's car struck Price's vehicle causing damage, including a small dent, scrapes, and paint transfer to the passenger side rear bumper. Defendant was charged with aggravated assault with a deadly weapon and criminal damage to property.

**{4}** Following the incident, Price obtained two estimates each exceeding $1,000 for the cost of repairing her vehicle, a previously undamaged 2018 Toyota Camry. Price got one estimate from the Toyota dealership where she purchased the vehicle; she got the other estimate from APEX Collision Center (initial APEX estimate). After the incident, Defendant got a job with APEX Collision Center. A week before trial, Defendant also got an estimate (Defendant's estimate) from APEX Collision Center, his employer, for the repairs to Price's vehicle for an amount less than $1,000. Defendant's estimate was prepared by JJ Castillo, while the initial APEX estimate had been prepared by Diego Urioste. Defense counsel disclosed Defendant's estimate to the State a few days prior to trial. The morning jury selection was to begin, the State requested a continuance to investigate Defendant's estimate. The district court denied the State's motion.

**{5}** Following its denial of the State's motion, the district court noted that because defense counsel had not filed a witness list, it was likely not possible to lay a foundation to introduce Defendant's estimate. Defense counsel explained that she mistakenly believed that the estimate was a sentencing matter and that the estimate did not need to be introduced as evidence during trial. The district court explained that the amount of damage was an essential element of the felony offense of criminal damage to property. Defense counsel then also moved for a continuance or, alternatively, for leave to file a belated witness list. Noting that the case had been pending for nearly ten months, the district court denied Defendant's motion for a continuance and request to file an untimely witness list. The district court stated that defense counsel was free to cross-examine regarding the value of the repairs despite the "possible credibility issues" associated with Defendant's estimate. The State then declared that it no longer intended to call Urioste to introduce the initial APEX estimate.

**{6}** At trial, Price testified that the Defendant first drove by the women as he left the parking lot of Kelly's Bar and Grill, arguing with Gutierrez. Price explained that Defendant put the car in reverse, reversed toward the women and hit Price's car. Price also explained that when Defendant hit her vehicle, she and Gutierrez were standing between Price's car and another car, which were parked adjacent to one another. Gutierrez testified similarly and further explained that Defendant could have driven his car between Price's car and the car parked beside it. Gutierrez also testified that she and Price jumped out of the way to avoid being hit by Defendant's vehicle. Price

testified that she obtained multiple estimates from local repair shops, each of which exceeded $1,000.

**{7}** At the conclusion of the State's case, defense counsel unsuccessfully moved for a directed verdict on both counts, arguing that the State failed to prove the essential elements of aggravated assault because testimony showed only that Defendant drove in a direction where there were people. Defense counsel also argued that it was impossible for Defendant to drive his vehicle between the two parked cars, and therefore no reasonable juror could have believed that Defendant was about to intrude on Price or Gutierrez's personal safety or bodily integrity. Defense counsel asserted as well that the State failed to prove the elements of criminal damage to property over $1,000 because there was no evidence showing an intent to damage Price's car and the State failed to demonstrate that the damage exceeded $1,000. Defendant testified that he never intentionally struck Price's car or attempted to hit anyone. The jury received lesser-included instructions for misdemeanor assault and misdemeanor criminal damage to property, but convicted Defendant of the charged offenses. This appeal followed.

## DISCUSSION

### I. The District Court Did Not Abuse its Discretion in Denying the Motion for Continuance

**{8}** Defendant argues that the district court erred in denying his motion for continuance. We review the district court's denial of a continuance for an abuse of discretion. *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135 ("The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant."). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). It is a defendant's burden to establish an abuse of discretion and further, "that the abuse was to the injury of the defendant." *Salazar*, 2007-NMSC-004, ¶ 10 (internal quotation marks and citation omitted).

**{9}** Defendant argues that a district court evaluates a motion for continuance by applying the factors set forth in *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. Defendant contends that to "consider" the factors, the district court must "think about this evidence with a degree of care and caution." Relying on *State v. Nehemiah G.*, Defendant asserts that when a trial court fails to consider even one factor, it abuses its discretion. 2018-NMCA-034, ¶ 46, 417 P.3d 1175. Defendant contends the district court failed to consider any of the *Torres* factors and therefore the district court abused its discretion. The State answers that we recently, in an unpublished memorandum opinion, addressed and rejected a similar argument, stating that we will not presume from an absence of findings in the record that the district court

did not consider the *Torres* factors.[1] The State also argues that *Nehemiah G.* is inapplicable in this case.

**{10}** We first address *Nehemiah G.*, in which we determined that the district court abused its discretion by not considering the statutorily enumerated factors set forth in NMSA 1978, Section 32A-2-20(C) (2009). *See Nehemiah G.*, 2018-NMCA-034, ¶ 20. That section governs the process by which a court determines whether a juvenile is to be sentenced as an adult. *See* § 32A-2-20(C). Defendant points to no similar such statutory obligation here, nor any case in which we have held that the *Torres* factors, or other non-statutory evaluative criteria employed by trial courts, are akin to enumerated statutory factors. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." *Valerio v. San Mateo Enter., Inc.*, 2017-NMCA-059, ¶ 45, 400 P.3d 275 (internal quotation marks and citation omitted). Nonetheless, Defendant argues that had the district court considered the *Torres* factors, it would have found that the factors supported granting of the motion for a continuance.[2]

**{11}** The New Mexico Supreme Court has articulated seven factors that courts should consider when deciding whether to grant or deny a motion for a continuance:

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*Torres*, 1999-NMSC-010, ¶ 10. We will not presume from the absence of findings in the record that the district court failed to consider that which it is required to consider or otherwise abused its discretion. *See State v. Gonzales*, 1999-NMCA-027, ¶ 11, 126 N.M. 742, 975 P.2d 355 ("No rule of criminal procedure requires the district court to set forth the factual basis of its decision."). We see nothing that prevents application of *Gonzales* in the context of the *Torres* factors. Rather, and given the fact that we do not presume the occurrence of an abuse of discretion, *see State v. Finnell*, 1984-NMSC-064, ¶ 23, 101 N.M. 732, 688 P.2d 769, we take the approach that the *Torres* factors are suitable to application on appeal, and review the record in light of what would be required under *Torres* in order to deny a continuance request in a manner consistent

---

1The case cited by the State, *State v. Moffitt*, No. A-1-CA-36513, mem. op. ¶ 8 (N.M. Ct. App. Aug. 29, 2019) (non-precedential) (holding that "[t]he district court is not required to set forth the factual basis of its decision, and we will not presume from the absence of findings in the record that the district court did not consider the *Torres* factors when deciding to deny the continuance"). "[U]npublished orders, decisions, or memorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties." *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361.

2To the extent Defendant incorporates the district court's rejection of the State's motion for a continuance in its arguments, we decline to do the same in our analysis. The issue appealed by Defendant is limited to whether the district court abused its discretion in denying Defendant's own motion for continuance.

with a district court's discretion. *See State v. Stefani*, 2006-NMCA-073, ¶¶ 9, 13-17, 19, 139 N.M. 719, 137 P.3d 659 (applying *Torres* factors in the absence of a district court ruling as to each and concluding that a "no continuance" policy was an abuse of discretion); *see also State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 6, 447 P.3d 1159 ("We cannot say the district court abused its discretion by its ruling unless we can characterize the ruling as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)).

**{12}** Applying the *Torres* factors, we conclude that the district court did not abuse its discretion in denying the motion for a continuance. Beginning with the first factor, the length of the desired continuance, Defendant did not request a specific amount of time for the continuance. Defendant now argues that "presumably it would have been a short period of time"; however, the district court was not given any indication that the requested delay would be minimal. *Compare Torres*, 1999-NMSC-010, ¶ 15 (holding that a requested delay of a week or less weighed in favor of granting a continuance), with *State v. Salazar*, 2006-NMCA-066, ¶ 24, 139 N.M. 603, 136 P.3d 1013 (holding that the denial of a continuance was appropriate where the delay was likely at least two months). Because no specificity regarding the length of the needed continuance was provided by Defendant to the district court, this factor does not weigh in favor of granting or denying the motion. Regarding the second factor, the likelihood that a delay would accomplish Defendant's objectives, Defendant did not clearly establish what objective he sought to accomplish through a continuance. Even on appeal, Defendant states merely that "[e]ven a short delay would have accomplished the objectives of both parties by allowing an investigation into the damage estimate." While an investigation might have resulted in Defendant identifying a witness to introduce the lesser, second APEX estimate—despite the credibility issues of the second APEX estimate foreseen by the district court—neither the district court nor we are presented with a degree of specificity that repudiates the district court's application of its discretion as to this factor. *See* UJI 14-1501 NMRA. "When reasons both supporting and detracting from a decision exist, there is no abuse of discretion." *In re Camino Real Env't Ctr., Inc.*, 2010-NMCA-057, ¶ 23, 148 N.M. 776, 242 P.3d 343.

**{13}** Turning to the third factor, neither party previously sought a continuance prior to the morning jury selection was set to begin. However, regarding the fourth factor, the degree of inconvenience to the parties and the court, the *Torres* factors weigh in favor of denying the Defendant's motion. Defendant asserts that there is no reason to believe that the parties or court would have been inconvenienced had the motion been granted. Defendant also claims that an "inconvenience must be particularized." *See Torres*, 1999-NMSC-010, ¶ 17 (holding that "generalized concerns about expediency are not sufficient to override [the defendant]'s constitutional right to compulsory process). The State is correct that we have consistently determined that there is a presumption of inconvenience when a continuance is requested on the day of trial. *See Gonzales*, 2017-NMCA-080, ¶ 36 ("[W]e presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court."); *State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("[A]s a general rule, a motion for a continuance filed at the last minute is not favored."). We agree that because

Defendant's motion for a continuance was made on the morning on which trial was set to begin, granting the motion for a continuance would presumptively have caused delay to the parties and thereby inconvenienced the court, along with the jurors and witnesses who appeared for trial. *See Gonzales*, 2017-NMCA-080, ¶ 36.

**{14}** Turning to the fifth factor, we see no indication that the continuance was requested in bad faith. However, the sixth factor—the fault of the movant in causing a need for the delay—markedly weighs against granting a continuance. Indeed, Defendant alone was responsible for having presented the second APEX estimate to the State a mere four days before trial, and for failing to establish a manner in which the estimate would be admissible at trial. Defendant offers no reason as to why this estimate could not have been discovered in the ten months leading up to trial. *See Salazar*, 2006-NMCA-066, ¶ 26 (explaining that the trial court could have determined that it was defense counsel's fault in causing the claimed need for delay when "defense counsel had filed four last-minute motions about a week before trial" and counsel could previously have filed these motions). Finally, there was no prejudice in denying the continuance. Defendant argues that he was prejudiced because the trial court's chosen remedy—"allow trial counsel to cross-examine . . . Urioste, the State's witness who prepared the damage estimate exceeding $1,000"—was denied to Defendant when the State did not call Urioste as a witness. **[BIC 14]** While true that Defendant could not use the second APEX estimate to cross-examine Urioste, defense counsel was free to use Defendant's estimate during "any type of cross-examination," including of Price, who testified regarding the estimates she received in order for her car to be repaired, including the initial APEX estimate. We conclude that under the *Torres* factors the district court did not abuse its discretion in denying Defendant's motion for a continuance.

## II.    The Evidence is Sufficient to Support Defendant's Convictions

**{15}** Defendant challenges the sufficiency of the evidence as to his convictions for felony criminal property damage and aggravated assault. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). Our review employs a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then consider "whether the evidence, so viewed, supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

**A.** **The Evidence is Sufficient to Support Defendant's Conviction for Felony Criminal Damage to Property**

**{16}** Defendant first argues that the State failed to present sufficient evidence to support his conviction for felony criminal damage to property. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Here, the jury was instructed to find Defendant guilty of felony criminal damage to property if the State proved beyond a reasonable doubt: (1) "[D]efendant intentionally damaged the property of another"; (2) "[t]he amount of damage to the property was more than $1,000"; and (3) "[t]his happened in New Mexico on or about the 16th day of September 2017". *See* UJI-14-1501. Defendant challenges the sufficiency of the evidence only as to the amount of damage.

**{17}** Here, the jury was instructed that the "[a]mount of damage" was defined as:

> the difference between the price at which the property could ordinarily be bought or sold prior to the damage and the price at which the property could be bought or sold after the damage. If the cost of repair of the damaged property exceeds the replacement cost of the property, the value of the damaged property is the replacement cost.

We have determined that this instruction provides two separate methods for evaluating the amount of damage to property. *See State v. Barreras*, 2007-NMCA-067, ¶¶ 5-6, 141 N.M. 653, 159 P.3d 1138. The first method is the diminution in the value of the damage to the property—the "before and after value." *Id.* ¶ 5. The second method is the cost of repair or replacement, whichever is less. *Id.* ¶ 6. Under the second method, the State does not need to demonstrate the value of the property immediately prior to the damage. *Id.* ¶ 11 (holding that when the state relies on cost of repair evidence, "the amount of damage can be assessed without determining the before and after value of the property"). Instead, "the [s]tate could introduce other evidence of the cost of repair or replacement such as receipts, price quotes for repair services, or advertisements that state the cost of similar items." *State v. Cobrera*, 2013-NMSC-012, ¶ 8, 300 P.3d 729. "In some cases, . . . the facts may clearly establish that the replacement cost would exceed the cost of repair and no additional evidence or testimony may be required; nonetheless, the replacement cost remains part of the [s]tate's burden." *State v. Fernandez*, 2015-NMCA-091, ¶ 9, 355 P.3d 858. However, in *Barreras*, we held that the cost of repair was the appropriate value to use when the defendant used a tire iron to damage a one-year-old Cadillac Escalade that was previously in good condition. 2007-NMCA-067, ¶ 9. The cost to repair the damage in that case was $5,100, but the state offered no specific evidence as to the replacement cost. *Id.* ¶¶ 2, 8. This Court rejected the defendant's argument that the state must present evidence of both the cost of repair and the cost of replacement for the jury to compare, concluding that the "average juror" would be aware that the replacement cost of the Cadillac would be higher than the cost of repair. *Id.* ¶ 8.

**{18}**    Here, the State introduced sufficient evidence to establish that the cost of repairing Price's vehicle exceeded $1,000. Price testified that she obtained two estimates from local repair shops, both of which exceeded $1,000. Price also testified that after the incident, her car's bumper was dented, paint was missing, and the vehicle was scratched. Defendant concedes that although the State established that Price's car was a 2018 Toyota Camry and the cost of a new car would clearly exceed the cost of repair, the State offered "so little information about the basis for . . . Price's estimate that it is unclear what the specific repairs were." Defendant points to *Cobrera*, 2013-NMSC-012, ¶ 8, in which we explained that the "the [s]tate could introduce other evidence of the cost of repair" to argue that the State offered no similar evidence here. We disagree. Unlike in *Cobrera*, Price was not speculating about the amount of damage to her vehicle. Rather, she received two formal, specific estimates: one from the Toyota dealership where she purchased her vehicle, and the other from APEX Collision Center.[3] *See also Fernandez*, 2015-NMCA-091, ¶¶ 6, 9 (evidence of damage to a pickup truck, including several photographs of the truck and testimony regarding damage to the back bumper may be sufficient for cost of repair).

**{19}**    For these reasons, we hold that the State presented sufficient evidence that the damage to the car exceeded $1,000.

**B.      The Evidence is Sufficient to Support Defendant's Conviction for Aggravated Assault with a Deadly Weapon**

**{20}**    Defendant next argues that the evidence was insufficient to support his conviction of aggravated assault with a deadly weapon. To convict Defendant of aggravated assault with a deadly weapon, the jury was required to find, in relevant part, that the State proved beyond a reasonable doubt that Defendant drove his car toward Gutierrez and Price, causing them to reasonably believe that Defendant was about to intrude on their bodily integrity or personal safety by touching or applying force to them. *See* § 30-3-2 (defining aggravated assault of "unlawfully assaulting or striking at another with a deadly weapon"). Defendant argues that "considering the improbability that [Defendant] could have driven his car through the space between Ms. Price's car and the car parked just beside her and struck Ms. Price and Ms. Gutierrez, there is more than reasonable doubt that [Defendant]'s driving caused Ms. Price and Ms. Gutierrez to reasonably believe that he would intrude on their bodily integrity or personal safety." Defendant claims that the incident was "nothing more than a minor car accident that occurred when [Defendant] tried to leave a parking lot."

**{21}**    There is no indication in the trial testimony whatsoever that Price and Gutierrez's beliefs were unreasonable. Indeed, Gutierrez testified that she and Price jumped out of

---

3Defendant also argues that other courts have recognized that "[o]ff-the-wall, opinion testimony, or a mere estimate of cost of repair, without further evidence, is not sufficient to prove the cost of repairs for a criminal-mischief conviction." *Barnes v. State*, 248 S.W.3d 217, 220 (Tex. App. 2007) (emphasis, internal quotation marks and citation omitted). Defendant points to no controlling New Mexico authority holding similarly, *see Valerio*, 2017-NMCA-059, ¶ 45, nor do we agree that Price's testimony regarding the estimates of damage to her vehicle is "[o]ff-the-wall, opinion testimony." *Barnes*, 248 S.W.3d at 220.

the way to avoid being hit by Defendant's vehicle. "This Court does not substitute its judgment for that of the fact[-] finder concerning the credibility of witnesses or the weight to be given their testimony." *State v. Gurule*, 2004-NMCA-008, ¶ 38, 134 N.M. 804, 82 P.3d 975. "Testimony by a witness whom the fact[-]finder has believed may be rejected by an appellate court only if there is a physical impossibility that the statements are true or the falsity of the statement is apparent without resort to inferences or deductions." *Id.* (internal quotation marks and citation omitted). Defendant argues that a "physical impossibility" exists regarding Defendant's ability to have actually hit Price and Gutierrez with his vehicle. **[BIC 23]** However, Defendant provided no evidence to preclude the possibility that he could have struck Price and Gutierrez had they not jumped out of the way. "This Court will not consider and counsel should not refer to matters not of record in their briefs." *In re Aaron L.*, 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431.

**{22}** For these reasons, we affirm Defendant's conviction for aggravated assault with a deadly weapon.

**CONCLUSION**

**{23}** Based on the foregoing reasons, we affirm Defendant's convictions for felony criminal damage to property and aggravated assault with a deadly weapon.

**{24} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**