**Certiorari Denied, August 31, 2017, No. S-1-SC-36586**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-073**

**Filing Date: June 29, 2017**

**Docket No. A-1-CA-34680**

**STEVEN BEST,**

> **Petitioner-Appellee,**

**v.**

**CAMILLE A. MARINO,**

> **Respondent-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Darren M. Kugler, District Judge**

Law Office of Jerold D. Friedman
Jerold Friedman
Cypress, TX

L. Helen Bennett P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**     This appeal arises from a finding of indirect criminal contempt against Respondent

1

Camille Marino for her violation of an order of protection (Order of Protection) issued pursuant to the Family Violence Protection Act (FVPA), NMSA 1978, §§ 40-13-1 through -12 (1987, as amended through 2016). In addition to 179 days incarceration, the district court imposed an almost complete restriction on Respondent's ability to access the Internet.[1]

**{2}** Respondent first argues that the Order of Protection is invalid and should be vacated by this Court. She bases this argument on her claim that Petitioner Steven Best did not allege or prove the elements of "stalking" when he obtained the Order of Protection in October 2012. Petitioner argues that Respondent's argument is an impermissible collateral attack on the Order of Protection and, as a result, this Court should dismiss Respondent's appeal. Although we agree that Respondent's argument is subject to the collateral bar rule, we decline to dismiss the appeal outright in light of other potentially meritorious issues raised by Respondent. Respondent additionally argues without development that the district court lacked subject matter jurisdiction over this action. This argument lacks merit.

**{3}** Respondent next argues that the restrictions imposed by the Order of Protection violated her First Amendment right to free speech by treating her online activity[2]—which inarguably is speech—as sanctionable conduct. We disagree.[3] As discussed at length herein, the Order of Protection imposes certain restraints on Respondent that could not be imposed on a non-restrained person. As such, the appropriate question on appeal is not whether the government can generally restrict the speech at issue in this case, but whether the district court can restrict Respondent from engaging in such speech. We conclude that it can.

**{4}** In a related argument, Respondent argues that the district court's finding of contempt resulted from a due process violation because the Order of Protection failed to provide

---

[1]The district court's order allowed Respondent to access the Internet to contact her attorney and her accountant. All other access was prohibited.

[2]Throughout this opinion we use the phrase "online activity" to describe Respondent's posting of statements and photographs related to Petitioner on (1) Respondent's own website; (2) Respondent's own Facebook and other social media pages; and (3) third-party controlled Facebook and other social media pages. Our use of the phrase "online activity" does not include email messages sent directly by Respondent to Petitioner, which we consider separately.

[3]Substantial evidence supports a finding that Respondent violated the Order of Protection by directly contacting Petitioner by telephone, email, and postal service. *See State v. Smith*, 2016-NMSC-007, ¶ 19, 367 P.3d 420 ("Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks and citation omitted)). Although we could simply affirm the district court's contempt finding under the right-for-any-reason doctrine, we instead elect to address the questions that arise from its finding that Respondent's online activity constituted a violation of the Order of Protection.

sufficient notice that her online activity would be considered "contact" constituting a violation. The district court did not, however, conclude that Respondent "contacted" Petitioner in violation of the Order of Protection. It concluded that Respondent's "harassment of Petitioner" caused "emotional distress." The Order of Protection restrained Respondent from committing "acts of abuse" and defined "abuse" to include "any incident . . . resulting in . . . severe emotional distress[.]" The appropriate question on appeal, therefore, is not whether Respondent's online activity was "contact," but whether Respondent reasonably should have known that her online activity would cause Petitioner to suffer severe emotional distress. We answer this question in the affirmative.

**{5}**     Finally, Respondent argues that the district court's restriction of her ability to access the Internet is overbroad and violates the First Amendment. We agree. We therefore affirm Respondent's term of incarceration but reverse the restriction on her ability to access the Internet.

## BACKGROUND

**{6}**     Petitioner is a philosophy professor at the University of Texas at El Paso (UTEP) and resides in Anthony, New Mexico. Respondent resides in Wildwood, Florida. Petitioner and Respondent became acquainted through their work in the animal rights movement and maintained a platonic friendship for several years until that friendship deteriorated in August 2012.

**{7}**     On October 15, 2012, Petitioner filed a petition requesting protection from acts of domestic abuse perpetrated by Respondent. His petition alleged that Respondent (1) sent threatening email messages, (2) made threatening telephone calls, (3) left threatening voice messages, and (4) posted slanderous and derogatory statements about Petitioner on her website and Facebook page.

**{8}**     On October 26, 2012, a domestic violence special commissioner (the special commissioner) held a hearing (October 2012 hearing) on Petitioner's claims. The special commissioner found that Respondent was a "stalker" and recommended that the district court enter an order of protection. Respondent did not file any objections to the special commissioner's findings or recommendations.

**{9}**     The district court reviewed and adopted the special commissioner's findings and recommendations and entered an Order of Protection using Form 4-965 NMRA, which articulated the terms of the order of protection. The Order of Protection restrained Respondent from "committing further acts of abuse or threats of abuse" and "any contact" with Petitioner and defined "abuse" as:

> [A]ny incident by one party against the other party or another household member resulting in (1) physical harm; (2) severe emotional distress; (3) bodily injury or assault; (4) threat by . . . Respondent causing imminent fear

3

of bodily injury to the other party or any household member; (5) criminal trespass; (6) criminal damage to property; (7) repeatedly driving by Petitioner's . . . residence or workplace; (8) telephone harassment; (9) stalking; (10) harassment; or (11) harm or threatened harm to children in any manner set forth above.

In light of the specific conduct alleged, the district court modified the definition of "contact" on Form 4-965. As a result, the Order of Protection stated that Respondent "shall not telephone, talk to, visit or contact [Petitioner] in any way . . . including social media[.]"

> On July 1, 2014, Petitioner filed an affidavit of violation, in which he alleged: Since the filing of th[e O]rder [of Protection], the Respondent has used social media to harass the Petitioner. She has caused severe emotional distress. The Respondent has used her websites, social media (including [F]acebook, [T]witter, [P]interest), and blogging to carry out revenge styled postings, including numerous damaging pictures of [Petitioner] and making outrageous/false accusations against him. These posts are intended to harm [Petitioner's] career, charitable causes, and personal life. This has occurred on numerous dates between the issuance of the [O]rder of [P]rotection and the date of this filing[.]

**{10}** This affidavit triggered a hearing before the special commissioner. Petitioner introduced sixteen exhibits—consisting of screen captures of Respondent's website and Facebook page—purported to represent merely a fraction of Respondent's online activity since October 2012. Petitioner also introduced an email message sent directly from Respondent to Petitioner on November 8, 2012. The special commissioner found that Respondent violated the Order of Protection by "contacting [Petitioner], by using social media to harass him, by using social media to stalk him, and by using social media to cause severe emotional distress." As a result of these findings, the special commissioner recommended sanctions and certified the matter to the district court for a criminal contempt hearing.

**{11}** Respondent filed objections to the special commissioner's recommendations. The district court scheduled a hearing to resolve Respondent's objections, which the district court stated was a "hearing de novo" on the special commissioner's recommendations.

**{12}** Both parties testified, and Petitioner introduced twenty-eight exhibits—again consisting of screen captures of Respondent's online activity. Petitioner also introduced three email messages sent directly from Respondent to Petitioner on November 4, 2012 and November 8, 2012. In these exhibits, Respondent referred to Petitioner as (1) "the grand high exalted drug-addicted hypocrite," (2) "a drug-addled imbecile," (3) "a sexist, racist woman beater,"and (4) "UTEP junkie professor." One exhibit threatened to "hold [Petitioner] accountable" and to make him "pay dearly." Other exhibits threatened to "expose" and to "neutralize" Petitioner. Still others contained song lyrics with obliquely violent imagery.

4

Many of the exhibits included photographs of Petitioner snorting prescription drugs (drug photos). Petitioner also testified that: (1) Respondent continued to directly contact Petitioner by telephone and email after the entry of the Order of Protection; (2) Respondent mailed a package containing written materials to Petitioner's home address after the entry of the Order of Protection; and (3) Petitioner's girlfriend received two telephone calls from an unknown individual alleging that the caller was driving through Anthony, New Mexico with the intent to kill Petitioner and his cats.

**{13}** Inexplicably, the district court did not discuss the possibility that Respondent's direct contact of Petitioner—by telephone, postal service, and email—constituted a violation of the Order of Protection. Instead, it focused its ruling expressly on exhibits related to Respondent's online activity. In its oral ruling, the district court cited specific exhibits that it found to violate the Order of Protection. Its second amended order memorialized its oral ruling and referred to Respondent's use of "social media and the [I]nternet to engage in a sustained pattern of stalking and harassment of Petitioner[,] including . . . emotional distress to Petitioner." It sentenced Respondent to 179 days incarceration with credit for time served. It also ordered that Respondent "shall not use the [I]nternet or any social media for any purpose other than contacting her attorney or accountant." (Emphasis omitted.) This appeal resulted.

**{14}** On June 13, 2016, Respondent filed a request for this Court to designate the state of New Mexico as the real party in interest. This request was denied.[4]

## COLLATERAL ATTACK

**{15}** Respondent's first argument on appeal is that the Order of Protection is invalid and should be vacated by this Court because Petitioner did not allege or prove the elements of "stalking" when he obtained the Order of Protection in October 2012. Petitioner claims that Respondent is not now permitted to attack the validity of the Order of Protection after a finding of contempt. We agree with Petitioner.

**{16}** This issue was addressed in *State v. Bailey*, in which the defendant defied an injunctive order that required him to obtain a driver's license and registration prior to operating his vehicle. 1994-NMCA-107, ¶ 3, 118 N.M. 466, 882 P.2d 57. After the defendant refused to comply with the injunction, the district court found him in contempt. *Id.* On appeal, this Court held that the district court lacked authority to issue the injunction

---

[4]Although we acknowledge the potential merits of Respondent's argument, Respondent failed to preserve the issue at trial, and we decline to review the question for the first time on appeal. *See* Rule 1-093(D)(2) NMRA ("The court shall appoint the district court to prosecute the criminal contempt for the state."); *State v. Frazier*, 1973-NMCA-127, ¶ 7, 85 N.M. 545, 514 P.2d 302 (holding that alleged errors that are neither jurisdictional nor fundamental may not be raised for the first time on appeal).

5

but upheld the finding of contempt. *Id.* ¶¶ 6, 11. We based our holding on the "collateral bar rule," which precludes litigants "from challenging [a] contempt citation by a collateral attack on the injunction." *Id.* ¶ 11. We additionally noted that "[t]he method of correcting error is by appeal, and not by disobedience." *Id.* (internal quotation marks and citation omitted).

**{17}** Respondent claims that, during the October 2012 hearing, Petitioner failed to prove that Respondent's actions constituted "stalking" as provided in Section 40-13-2(D)(1) and that Petitioner's principal concern was for his reputation rather than his physical safety. Section 40-13-2(D)(1) limits acts of "domestic abuse" by non-household members to "stalking" and "sexual assault." Petitioner did not allege that he was a victim of sexual assault. As such, to justify restraint under the FVPA, Petitioner's burden at the October 2012 hearing was to prove that Respondent's conduct constituted "stalking."

**{18}** The special commissioner expressly found Respondent to be a "stalker." Rule 1-053.1 NMRA provided Respondent with an opportunity to challenge the special commissioner's findings, including whether sufficient evidence supported the special commissioner's finding that Respondent was a "stalker," before the district court adopted the special commissioner's recommendations and entered the Order of Protection. *See* Rule 1.053.1(H)(1)(b) ("If the party files timely, specific objections to the recommendations, the [district] court shall conduct a hearing appropriate and sufficient to resolve the objections."). Respondent did not file objections to the special commissioner's recommendations. In the absence of objections from Respondent, the district court adopted the special commissioner's recommendations and entered the Order of Protection. The collateral bar rule precludes a restrained party from challenging the merits of an injunction after a finding of contempt. Respondent's argument presents such a challenge and is, therefore, precluded.

**SUBJECT MATTER JURISDICTION**

**{19}** In an associated claim, brought pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Respondent argues that the district court lacked subject matter jurisdiction over this action. The issue of subject matter jurisdiction may be raised at any time, including for the first time on appeal. *Lasley v. Baca*, 1981-NMSC-041, ¶ 13, 95 N.M. 791, 626 P.2d 1288. We review questions of subject matter jurisdiction de novo. *Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 8, 139 N.M. 625, 136 P.3d 1035.

**{20}** "[D]istrict courts are courts of general jurisdiction having the power to hear all matters not excepted by the constitution and those matters conferred by law." *State ex rel. Foy v. Austin Capital Mgmt.*, 2015-NMSC-025, ¶ 7, 355 P.3d 1 (internal quotation marks and citation omitted). "The only relevant inquiry in determining whether the court has subject matter jurisdiction is to ask whether th[e] kind of claim . . . advance[d] falls within the general scope of authority conferred upon such court by the constitution or statute." *Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 12, 120 N.M. 133, 899 P.2d 576 (internal quotation marks and citation omitted).

**{21}** Petitioner alleged that he was a victim of domestic abuse and that Respondent perpetrated that abuse. Section 40-13-3(A) confers jurisdiction to the district court in the judicial district in which an alleged victim of domestic abuse lives. Respondent does not contest either of these points on appeal. As a result, the district court had subject matter jurisdiction over this action.

## FREE SPEECH RIGHTS OF RESTRAINED PERSONS

**{22}** Respondent next argues that her online activity is protected speech and is, therefore, not sanctionable. As indicated above, we address this argument by considering whether the state is permitted to sanction Respondent's online activity given the limitations placed on her First Amendment rights by the Order of Protection. "Whether a statement is privileged under the First Amendment presents a question of law for the court to determine." *Kimbrell v. Kimbrell*, 2013-NMCA-070, ¶ 32, 306 P.3d 495 (alteration, internal quotation marks, and citation omitted), *rev'd on other grounds*, 2014-NMSC-027, 331 P.3d 915. We review questions of constitutional law de novo. *Morris v. Brandenburg*, 2015-NMCA-100, ¶ 26, 356 P.3d 564, *aff'd* 2016-NMSC-027, 376 P.3d 836.

**{23}** The First Amendment to the United States Constitution prohibits the government from enacting laws "abridging the freedom of speech." *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 22, 309 P.3d 53. That said, neither the United States nor the New Mexico Constitution provides an absolute right to free speech. *See United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012) (holding that certain categories of speech, including "advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called 'fighting words'; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent" are not protected by the First Amendment (citations omitted)); *City of Albuquerque v. Pangaea Cinema LLC*, 2012-NMCA-075, ¶ 24, 284 P.3d 1090 (holding that "First Amendment rights are not immune from governmental regulation" (internal quotation marks and citation omitted)), *rev'd sub nom. on other grounds by State, City of Albuquerque v. Pangaea Cinema LLC*, 2013-NMSC-044, 301 P.3d 604; *City of Farmington v. Fawcett*, 1992-NMCA-075, ¶¶ 8-10, 114 N.M. 537, 843 P.2d 839 (holding that (1) Article II, Section 17 of the New Mexico Constitution does not provide an "absolute right" to free speech, and (2) "the state may constitutionally regulate . . . speech").

**{24}** The state has broad power to limit a person's liberty interests based on that person's prior conduct. *See Black's Law Dictionary* 935 (10th ed. 2014) (defining "liberty interest" as "[a]n interest protected by the due-process clauses of state and federal constitutions"). Under the most extreme circumstances, the state may incarcerate a person for the remainder of the person's natural life. *See* NMSA 1978, § 31-18-14 (2009) ("When a defendant has been convicted of a capital felony, the defendant shall be sentenced to life imprisonment or life imprisonment without possibility of release or parole."). The state may restrict a convicted felon's right to vote or to possess a firearm. *See* NMSA 1978, § 31-13-1(A) (2005) ("A person who has been convicted of a felony shall not be permitted to vote in any . . .

7

election held pursuant to the provisions of the Election Code[.]"); NMSA 1978, § 30-7-16(A) (2001) ("It is unlawful for a felon to receive, transport or possess any firearm or destructive device in this state."). It may also restrict the movements of convicted sex offenders within the state. *See* NMSA 1978, § 29-11A-4(B), (F) (2013) (requiring convicted sex offenders to register each and any new physical address with the county sheriff). The rationale underlying such statutes is that the public interest is served by limiting a convicted felon's ability to engage in certain activity—even though that limitation burdens the exercise of the person's inherent rights.[5] *See, e.g.*, *Lewis v. United States,* 445 U.S. 55, 61 (1980) (stating that Congress's intent in prohibiting the possession of firearms by felons was directly related to "the problem of firearm abuse by felons"); *see also Kane v. City of Albuquerque*, 2015-NMSC-027, ¶ 9, 358 P.3d 249 (holding that "the right to vote is fundamental"); *Griego v. Oliver*, 2014-NMSC-003, ¶ 1, 316 P.3d 865 (describing "the right to bear arms, freedom of speech, [and] freedom of the press" as "inherent rights, enjoyed by all New Mexicans").

**{25}** Orders of protection are essentially justified by the same rationale. The purpose of an order of protection is to prevent future harm to a protected party by a restrained party. *See United States v. Or. State Med. Soc.*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."); Section 40-13-5(A)(7) (providing that the district court may order "injunctive relief as [it] deems necessary for the protection of a party"). To achieve this result, it is constitutionally permissible to limit a restrained party's ability to engage in certain activity—including the exercise of his or her right to free speech.

**{26}** The Order of Protection limited Respondent's right to speak and publish freely only inasmuch as it restrained her from (1) directly contacting Petitioner, and (2) causing Petitioner to suffer severe emotional distress. *See* § 40-13-5(A) (authorizing the district court to enjoin a restrained party from abusing a protected party); Form 4-965 (prohibiting a restrained party from contacting a protected party and/or from "committing further acts of abuse[,]" and defining "[a]buse" as "any incident . . . resulting in . . . severe emotional distress"). Placing such limitations on Respondent—as the restrained party under the Order of Protection—is not an unconstitutional limitation on her First Amendment rights.

**{27}** Respondent argues, by citing to *Kimbrell*, 2013-NMCA-070, that a district court must affirmatively find that speech alleged to violate an injunctive order actually constitutes "a true threat or similar unprotected speech" prior to imposing any type of sanction. Respondent's interpretation of *Kimbrell* is not persuasive in the present case.

**{28}** *Kimbrell* arose from a highly contentious custody dispute, in which the father filed numerous motions to remove, and at least one disciplinary complaint against, the guardian ad litem (the GAL). *Id.* ¶ 2. In response to his fifth motion to remove the GAL, the district

---

[5]Although Respondent was not convicted of "stalking," we conclude that the district court's finding is analogous to a conviction for the purposes of this opinion.

court ordered the father to "refrain from filing any complaint, motion, or other 'device' pertaining to the GAL without leave of the court." *Id.* ¶ 4.

**{29}** The father in *Kimbrell* sought leave to file another disciplinary complaint against the GAL. *Id.* ¶ 5. The district court instead entered a preliminary injunction that reprimanded the father for "improper" behavior and enjoined him "from communicating with the media, the Department of Justice, or the [c]hildren's biological parents regarding his complaints about the GAL." *Id.* The father then formed an organization called "Stop Court Abuse of Children" (SCAC), through which he filed another disciplinary complaint against the GAL without the leave of the district court. *Id.* He also published the newly-filed disciplinary complaint and other related materials (collectively, the materials) on SCAC's website. *Id.*

**{30}** The GAL in *Kimbrell* requested that the district court issue a permanent injunction requiring the father to remove the materials from the Internet. *Id.* ¶ 6. At the hearing on this request, the GAL argued that the materials were defamatory. *Id.* The father argued that the requested injunction would violate the First Amendment. *Id.*

**{31}** The district court ordered the father to remove the materials but did not determine that the materials were defamatory at trial or in its order. *Id.* ¶¶ 7, 43. Instead, the district court ruled that publication of the materials on the Internet "harass[ed] and intimidate[d] the GAL in the exercise of her duties." *Id.* ¶ 43 (alteration and internal quotation marks omitted). This Court reversed, stating that "freedom of speech can only be limited where the speech is not protected" and holding that the district court's order failed to "address[] or establish[] the existence of the requisite elements of defamation[.]" *Id.* ¶¶ 44, 45.

**{32}** Our reading of *Kimbrell* indicates that the issue on appeal in *Kimbrell* arose not from a violation of the preliminary injunction, but from the GAL's request that the district court require the father to remove allegedly defamatory materials from the Internet. As such, *Kimbrell* is distinguishable because, unlike the present case, the materials—or speech—at issue were not previously subject to an injunctive order.

**{33}** The district court in this case found Respondent to be a "stalker" in October 2012. Respondent did not appeal or otherwise contest this finding prior to the date on which Petitioner filed his affidavit of violation. Because she is a "stalker," Respondent is subject to the restraints imposed by the FVPA and the Order of Protection. Those restraints included valid limitations on her First Amendment rights.

**{34}** The district court, therefore, was not required to find that Respondent's online activity constituted defamation or harassment or stalking or some otherwise unprotected speech. Instead, it needed only to conclude that Respondent's online activity violated the Order of Protection by causing Petitioner to suffer severe emotional distress. Similarly, on appeal, we need not determine whether Respondent's online activity constituted unprotected speech, but instead we need only determine whether sufficient evidence supports a finding

that Respondent's online activity caused Petitioner to suffer severe emotional distress.[6]

## SUFFICIENCY OF THE EVIDENCE

**{35}** "Sufficient evidence, in a criminal contempt proceeding, is proof beyond a reasonable doubt." *In re Stout*, 1984-NMCA-131, ¶ 11, 102 N.M. 159, 692 P.2d 545. A "reasonable doubt" is one "that would make a reasonable person hesitate to act in the graver and more important affairs in life." UJI 14-5060 NMRA. We review the evidence in contempt proceedings "in the light most favorable to the verdict." *State v. Cherryhomes*, 1992-NMCA-111, ¶ 9, 114 N.M. 495, 840 P.2d 1261.

**{36}** As described above, Petitioner introduced numerous exhibits that demonstrated the content of Respondent's online activity. Of these exhibits, the district court emphasized that those containing the drug photos and referring to Petitioner as "a junkie" violated the Order of Protection. Its second amended order found that Respondent "used social media and the [I]nternet to engage in a sustained pattern of stalking and harassment of Petitioner[,] including . . . emotional distress." It is the emotional distress portion of the district court's finding that we consider in this opinion.

**{37}** No New Mexico appellate court has interpreted the meaning of "severe emotional distress" as that phrase is used in the FVPA. Its meaning, therefore, presents a question of statutory interpretation, which we review de novo. *State v. Powels*, 2003-NMCA-090, ¶ 3, 134 N.M. 118, 73 P.3d 256.

**{38}** When a statute leaves a word or phrase undefined, "[t]he words . . . should be given their ordinary meaning absent clear and express legislative intention to the contrary." *State v. Ogden*, 1994-NMSC-029, ¶ 24, 118 N.M. 234, 880 P.2d 845. "We give words their ordinary meaning, and if the statute is clear and unambiguous, we refrain from further statutory interpretation." *Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405 (internal quotation marks and citation omitted). Appellate courts often refer to dictionary definitions to ascertain the ordinary meaning of statutory language. *See State v. Nick R.*, 2009-NMSC-050, ¶ 18, 147 N.M. 182, 218 P.3d 868 (using dictionary definition in statutory interpretation).

**{39}** *Webster's Dictionary* defines "severe" as "of a great degree or an undesirable or

---

[6]As additional support for her "true threat or other unprotected speech" argument, Respondent provides citation to extrajurisdictional statutes, including N.Y. Penal Law § 240.30 and Conn. Gen. Stat. § 53A-183 (2017), and cases interpreting those statutes, including *People v. Dupont*, 107 A.D.2d 247, 252 (N.Y. App. Div. 1985) and *State v. Nowacki*, 111 A.3d 911, 928 (Conn. App. Ct. 2015). Because we are analyzing Respondent's online activity through the lens of the restraints placed upon her by the Order of Protection, neither the statutes nor cases cited by Respondent are pertinent to our analysis.

harmful extent." *Webster's Third New Int'l Dictionary* 2081 (3rd ed. 1993). It defines "emotion" as "the affective aspect of consciousness" and "emotional" as "relating to emotion[.]" *Id.* at 742. Finally, it defines "distress" as "anguish of body or mind" and "a painful situation[.]" *Id.* at 660.

**{40}** These definitions clarify that "severe emotional distress" is characterized by great harm to a person's mental health and well-being. This conclusion is consistent with our Supreme Court's declaration—also in the context of an intentional tort—that "severe emotional distress" is that which "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 28, 131 N.M. 607, 41 P.3d 333 (internal quotation marks and citation omitted). Considering the context in which the FVPA uses the phrase "severe emotional distress," we conclude that it unambiguously describes the prohibited conduct. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to . . . the specific context in which that language is used[.]").

**{41}** The evidence demonstrated Respondent's widespread publication of the drug photos on the Internet. The drug photos were often accompanied by statements claiming that Petitioner was a "junkie," a "drug-addled imbecile," and a "drug-addicted hypocrite." Petitioner testified to the impact of Respondent's online activity on his emotional well-being, stating that he (1) felt like "a person ha[d] . . . hijacked [his] life," (2) "go[es] to bed at night wondering what's coming next," (3) "had nightmares," and (4) "talked about suicide." Viewing the evidence in the light most favorable to the verdict, sufficient evidence supports a finding that Respondent's online activity resulted in severe emotional distress, characterized by great harm to Petitioner's mental health and well-being.

**{42}** We note that the district court found that Petitioner suffered emotional distress without explicitly finding that the emotional distress was severe.[7] On appeal, however, "there is a presumption of correctness in the rulings and decisions of the trial court and the party claiming error must clearly show error." *State v. Carlos A.*, 1996-NMCA-082, ¶ 8, 122 N.M. 241, 923 P.2d 608. The district court concluded that Respondent violated the Order of Protection, which required the level of severe emotional distress. Respondent does not find fault with the language of the finding on appeal. The district court's finding was sufficient under the circumstances.

**{43}** The Order of Protection validly limited Respondent's First Amendment rights. Because Respondent's online activity violated the Order of Protection, she was subject to sanction by the district court.

---

[7]The district court, however, did find that Respondent "harassed" Petitioner. Criminal harassment is defined, in pertinent part, as conduct that "would cause a reasonable person to suffer substantial emotional distress." NMSA 1978, § 30-3A-2(A) (1997).

**NOTICE OF CONDUCT CONSTITUTING A VIOLATION OF THE ORDER OF PROTECTION**

**{44}**     Respondent next argues that the district court's finding of contempt resulted from a due process violation because the Order of Protection did not provide sufficient notice that her online activity was "contact" that would constitute a violation. We review questions related to due process protections de novo. *State v. Tafoya*, 2010-NMCA-010, ¶ 7, 147 N.M. 602, 227 P.3d 92. As indicated above, we address Respondent's argument by considering not whether her online activity was "contact" as that word is commonly used, but whether she reasonably should have known that her online activity would cause Petitioner to suffer severe emotional distress.

**{45}**     "There is no question that New Mexico district courts have the power to hold a litigant in contempt for disobeying a direct order." *Bailey*, 1994-NMCA-107, ¶ 6. Such power is, however, subject to due process considerations. *See Concha v. Sanchez*, 2011-NMSC-031, ¶ 26, 150 N.M. 268, 258 P.3d 1060 ("A criminal contempt defendant is . . . entitled to due process protections of the criminal law[.]"). This Court has previously concluded that due process is satisfied in a criminal contempt proceeding when "an order existed that was sufficient to put [the defendant] on notice of what was required of him." *Cherryhomes*, 1992-NMCA-111, ¶ 10.

**{46}**     Form 4-965 contains fourteen numbered parts. Part 4 is titled "DOMESTIC ABUSE PROHIBITED." Part 5 is titled "CONTACT PROHIBITIONS." Both parts are intended to provide the restrained party with notice of the conduct that is prohibited.

**{47}**     Respondent claims that Part 5 of the Order of Protection is impermissibly vague because it does not place her on notice that "posting about [Petitioner] on her own website or a third-party's Facebook page would be considered 'contacting' [Petitioner]." The generic version of Form 4-965 provides that one or both parties "shall not telephone, talk to, visit or contact the other party in any way except as follows" and includes blank space for the special commissioner or district court to include exceptions. In the present case, the district court modified Form 4-965 to provide that "Respondent . . . shall not telephone, talk to, visit or contact the other party in any way including social media." Respondent's argument centers on the meaning of the word "contact."

**{48}**     The Order of Protection does not clearly define whether Respondent's online activity would constitute "contact" as that term is commonly used.[8] Ultimately, we need not decide

---

[8]Although it appears likely that this deficiency resulted from the district court's lack of familiarity with the nuances of various social media platforms, it is perhaps an indication that the FVPA is not well-suited to address the issue of cyberstalking. Other jurisdictions have enacted statutes that are more narrowly-tailored to the conduct at issue in this case. *See, e.g.*, Wash. Rev. Code § 9.61.260(1)(b) (2004) ("A person is guilty of cyberstalking if he or

in this case whether Respondent's online activity constituted "contact" as prohibited in Part 5 of the Order of Protection.

**{49}** Part 4 of the Order of Protection expressly prohibited "abuse," which it defined as "any incident by one party against the other party . . . resulting in . . . severe emotional distress." Whether this language provides sufficient notice of the conduct prohibited by the Order of Protection presents a question of statutory interpretation. This Court reviews questions of statutory interpretation de novo. *Powels*, 2003-NMCA-090, ¶ 3.

**{50}** Having just analyzed the meaning of "severe emotional distress" in the context of the FVPA, we decline to undertake the same analysis here. The Order of Protection prohibited Respondent from engaging in conduct that would cause Petitioner to suffer severe emotional distress. Petitioner is a university professor. Respondent repeatedly used the drug photos to imply that Petitioner had a substance abuse problem. Such intent is demonstrated by her characterization of Petitioner as a "junkie" and a "drug-addled imbecile."

**{51}** Respondent argues that the substance of her online activity was not intended to reach Petitioner. This argument is disingenuous. Respondent and Petitioner both worked in the animal rights arena. Respondent's website was accessible by the public, and she posted the same content on public Facebook pages. It is unreasonable for Respondent to assert that Petitioner could have remained unaware of her online activity in light of his ongoing work in the animal rights movement.

**{52}** A reasonable person would understand that Respondent's online activity would cause Petitioner to suffer severe emotional distress as we have defined that phrase above. Therefore, Part 4 of the Order of Protection provided Respondent with sufficient notice that her online activity could constitute a violation even if it did not constitute "contact" as that word is commonly used.

**PRIOR RESTRAINT**

**{53}** Respondent finally argues that the district court's restriction of her ability to access the Internet is overbroad and violates the First Amendment. "A statute is unconstitutionally overbroad if it criminalizes speech that is protected by the [F]irst [A]mendment." *State v. Gattis*, 1986-NMCA-121, ¶ 10, 105 N.M. 194, 730 P.2d 497. We review questions of constitutional law de novo. *Morris*, 2015-NMCA-100, ¶ 26.

**{54}** As discussed above, the First Amendment prohibits laws that abridge freedom of speech. *Elane Photography*, 2013-NMSC-040, ¶ 22. "Prior restraint" is a related term and

---

she, with intent to harass, intimidate, torment, or embarrass any other person, . . . makes an electronic communication to such other person or a third party . . . repeatedly whether or not conversation occurs[.]").

"is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Kimbrell*, 2013-NMCA-070, ¶ 40 (emphasis, internal quotation marks, and citation omitted). Prohibitions on prior restraint ensure that "the government may not enjoin or restrain a particular expression prior to its judicial review[.]" *Fawcett*, 1992-NMCA-075, ¶ 8.

**{55}** The district court's restriction of Respondent's ability to access the Internet is a clear prior restraint on her First Amendment right to speech. In discussing the Internet generally, the United States Supreme Court has stated that, "[f]rom the publisher's point of view, [the Internet] constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 853 (1997). It is, simply put, the modern-day town square. *See* Bill Gates, *Business @ the Speed of Thought: Succeeding in the Digital Economy* 131 (1st ed. 1999) ("By enabling people to shop, get news, meet each other, be entertained, and gossip in ways we're only now beginning to understand, the Internet is becoming the town square for the global village of tomorrow."); Stephen W. Bosky, Note, *Defamation in the Internet Age: Missouri's Jurisdictional Fight Begins With* Baldwin v. Fischer-Smith, 56 St. Louis U.L.J. 587, 587 (2012) (same).

**{56}** "Strict scrutiny applies when the violated interest is a fundamental personal right or civil liberty—such as first amendment rights, freedom of association, voting, interstate travel, privacy, and fairness in the deprivation of life, liberty or property—which the Constitution explicitly or implicitly guarantees." *Marrujo v. N.M. Highway Transp. Dep't*, 1994-NMSC-116, ¶ 10, 118 N.M. 753, 887 P.2d 747. To uphold a restriction that deprives an individual of such a right, the state must show "that the restriction . . . supports a compelling state interest, and that the legislation accomplishes its purposes by the least restrictive means." *Id.* The almost complete restriction of Respondent's ability to access the Internet imposed by the district court is not the least restrictive means by which to address the harm in this case. *See, e.g.*, *United States v. Walser*, 275 F.3d 981, 988 (10th Cir. 2001) (affirming conditions of release that require the probationer to obtain permission from his probation officer before accessing the Internet); *United States v. White*, 244 F.3d 1199, 1206-07 (10th Cir. 2001) (describing filtering software that restricts the user's ability to access blacklisted content and cautioning against sanctions that prohibit the use of any computer).

**{57}** Petitioner does not argue that either consideration is met in this case. Instead, he requests that we (1) allow the restriction to stand until such a time as Respondent "exhausts her remedies with the district court," or (2) affirm on public policy grounds. Having concluded that the almost complete restriction of Respondent's ability to access the Internet violates the First Amendment, we decline Petitioner's requests.

**CONCLUSION**

**{58}** Respondent's online activity violated the Order of Protection by causing Petitioner to suffer severe emotional distress. We therefore affirm the district court's sentence of 179

14

days incarceration. However, the district court's restriction of Respondent's ability to access the Internet is unconstitutionally overbroad. We reverse that restriction. In doing so, we remind Respondent that the Order of Protection remains in effect and that she remains subject to a finding of contempt for online activity that causes Petitioner to suffer severe emotional distress.

**{59}** **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**J. MILES HANISEE, Judge**