# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-045

Filing Date: May 30, 2019

No. A-1-CA-35912

STATE OF NEW MEXICO and
COUNTY OF BERNALILLO,

      Plaintiffs-Appellees,

and

FRANK FOY and JOHN CASEY,

      Qui Tam Plaintiffs-Appellants,

v.

OPPENHEIMER & CO., INC.; BOSC,
INC.; PATRICK PADILLA; ROYCE
O. SIMPSON; THOMAS WAYNE HAYES;
JOHN DOES 1 through 9; and JOHN
DOES 10 through 19,

      Defendants.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Victor S. Lopez, District Judge

Released for Publication September 17, 2019.

Hector H. Balderas, Attorney General
Joseph M. Dworak, Assistant Attorney General
Sean M. Cunniff, Assistant Attorney General
Santa Fe, NM

for Appellee State of New Mexico

W. Ken Martinez, County Attorney
Albuquerque, NM

for Appellee County of Bernalillo

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for Appellants

**OPINION**

**HANISEE, Judge.**

**{1}**     Qui tam plaintiffs Frank Foy and John Casey (Qui Tam Plaintiffs) appeal from the district court's order dismissing their complaint (Complaint) brought pursuant to the Fraud Against Taxpayers Act (FATA), NMSA 1978, §§ 44-9-1 to - 14 (2007, as amended through 2015). Qui Tam Plaintiffs contend that the district court erred in granting the State of New Mexico and County of Bernalillo's joint motion to dismiss the Complaint.  We disagree and affirm.

**BACKGROUND**

**{2}**     In August 2015 Qui Tam Plaintiffs filed a qui tam action[1] under Section 44-9-5 of FATA against former Bernalillo County Treasurer Patrick Padilla, two investment brokers and the brokerage firms for which they worked, and nineteen unnamed "John Doe" defendants (collectively, "Defendants") alleging that Defendants had "conspired . . . to defraud the County." In accordance with FATA's requirements, Qui Tam Plaintiffs filed their Complaint under seal and served the State and County with a copy on the day it was filed. After requesting and receiving two extensions of time to investigate the Complaint's allegations, the State and County filed a motion to unseal the case as well as a notice of declination to exercise their statutory right to intervene in the action. Two days later, the State and County jointly moved to dismiss Qui Tam Plaintiffs' Complaint with prejudice, contending that it was "absolutely barred" under either of two provisions of FATA: (1) Section 44-9-9(C), which provides that actions "based on allegations or transactions that are the subject of a . . . civil . . . proceeding in which the state or political subdivision is a party" are barred unless the attorney general or political subdivision "determines and certifies in writing that the action is in the interest of the state or political subdivision"; or (2) Section 44-9-9(D), which provides that "[u]pon motion of the attorney general or political subdivision, a court may, in its discretion, dismiss [a qui tam] action . . . if the elements of the alleged false or fraudulent claim have been publicly disclosed[.]" According to the State and County, the Complaint was subject to dismissal under Section 44-9-9(C) because the allegations and transactions at issue in the Complaint were already the subject of a lawsuit filed by the County against the same investors and brokerage firms just one month before the Complaint was filed. Alternatively, the State and County argued that the Complaint was subject to dismissal under Section 44-9-9(D) because the alleged fraudulent conduct underlying

---

[1] A "qui tam action" is "an action that allows a private person to sue for a penalty, part of which the government will receive." *N.M. State Inv. Council v. Weinstein*, 2016-NMCA-069, ¶ 7, 382 P.3d 923 (alteration, omission, internal quotation marks, and citation omitted).

Qui Tam Plaintiffs' FATA claims had been publicly disseminated through the media and in a governmental report in November 2014.

**{3}** The district court granted the State and County's dismissal motion under Section 44-9-9(D), upon finding that the elements of false or fraudulent claims in the Complaint had been publicly disclosed in news stories and the County's earlier-filed complaint and that the Complaint's allegations "mirror" and were "duplicative" of those made by the County in its lawsuit. Qui Tam Plaintiffs appeal from the district court's order of dismissal.

**DISCUSSION**

**{4}** The only issue we address in this case is whether the district court erred in dismissing Qui Tam Plaintiffs' Complaint under Section 44-9-9(D).

> Section 44-9-9(D) provides in full:
>
> Upon motion of the attorney general or political subdivision, a court may, in its discretion, dismiss an action brought pursuant to Section 44-9-5 . . . if the elements of the alleged false or fraudulent claim have been publicly disclosed in the news media or in a publicly disseminated governmental report at the time the complaint is filed.

By its plain language, Section 44-9-9(D) allows, but does not require, a district court to dismiss a qui tam action based on a motion brought under that section if (1) the motion is made by the government, and (2) the district court finds that the elements of the qui tam action's false or fraudulent claims have been publicly disclosed prior to the action being brought. *Id.*; *cf.* § 44-9-9(A)-(C) (providing no limitation as to who may move to bar an action from proceeding); *State ex rel. Foy v. Austin Capital Mgmt., Ltd.*, 2015-NMSC-025, ¶ 6, 355 P.3d 1 (considering a defendant's attempt to apply Section 44-9-9(B)'s bar).

**{5}** Qui Tam Plaintiffs do not challenge the district court's finding that the "elements of the alleged false or fraudulent claims presented in [Qui Tam Plaintiffs'] Complaint had been publicly disclosed in the news media and in a publicly available governmental report in the [County's c]omplaint at the time [Qui Tam Plaintiffs'] Complaint was filed." Instead, Qui Tam Plaintiffs argue that the district court erred by (1) interpreting Section 44-9-9(D) as an "absolute bar" to their lawsuit; (2) failing to take into account the best interests of the parties and the public purposes behind FATA; (3) dismissing the action without requiring the State and County to first intervene in the action, show good cause as to why dismissal should be granted, and present evidence to support their motion; and (4) "overlooking" Section 44-9-7, which Qui Tam Plaintiffs argue provides a possible award to a qui tam plaintiff whose action is based primarily on information that has been publicly disclosed. While not entirely clear, Qui Tam Plaintiffs appear to argue that any of the foregoing errors alone, but certainly considered together, constituted an abuse of

discretion by the district court, requiring reversal of the district court's order of dismissal and reinstatement of their Complaint.

**Standard of Review**

**{6}** As we have noted, Section 44-9-9(D) allows a district court to dismiss a FATA action "in its discretion" if certain elements are met. We review discretionary decisions for an abuse of discretion. *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6, 140 NM. 879, 149 P.3d 976. "We cannot say the district court abused its discretion by its ruling unless we can characterize the ruling as clearly untenable or not justified by reason." *Valerio v. San Mateo Enters., Inc.*, 2017-NMCA-059, ¶ 16, 400 P.3d 275 (alterations, internal quotation marks, and citation omitted). "When reasons both supporting and detracting from a decision exist, there is no abuse of discretion." *In re Camino Real Envtl. Ctr., Inc.*, 2010-NMCA-057, ¶ 23, 148 N.M. 776, 242 P.3d 343. A district court abuses its discretion "when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of the Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal quotation marks and citations omitted).

**I.      Whether the District Court Interpreted Section 44-9-9(D) as an "Absolute Bar" to Qui Tam Plaintiffs' Lawsuit**

**{7}** Qui Tam Plaintiffs first argue that "[t]he district court construed FATA as an absolute bar to [Qui Tam Plaintiffs'] lawsuit because [their] lawsuit incorporated some facts which had already been publicly reported." We understand Qui Tam Plaintiffs' argument to be that the district court misapprehended the discretionary aspect of its decision under Section 44-9-9(D) by adopting the arguments advanced by the State and County below, i.e., that Section 44-9-9(D) "preclude[s] the [district c]ourt's jurisdiction in this case" and "requires dismissal" if the district court found, as it did, that the elements of Qui Tam Plaintiffs' claims had been publicly disclosed. If, in fact, the district court interpreted Section 44-9-9(D) as an "absolute bar" to Qui Tam Plaintiffs' Complaint because the elements of fraud contained therein had been publicly disclosed, its dismissal would constitute an abuse of discretion. *See Aragon*, 2003-NMCA-126, ¶ 9 (noting that the district court's misapprehension of the law constitutes an abuse of discretion). However, for the reasons that follow, we disagree with Qui Tam Plaintiffs' characterization of the district court's order.

**{8}** Qui Tam Plaintiffs contend that the district court "agreed with the [State and County's] argument that [Qui Tam Plaintiffs'] lawsuit . . . is absolutely barred under the applicable provisions of [FATA.]" In support of this assertion, Qui Tam Plaintiffs cite paragraph eleven of the district court's order. That paragraph merely quotes language from the State and County's motion to dismiss stating that Qui Tam Plaintiffs' Complaint

"is absolutely barred under [FATA]." Nothing in the district court's findings and conclusions indicate that the court agreed with the statement or that it applied Section 44-9-9(D) as an absolute bar to Qui Tam Plaintiffs' suit. Indeed, the district court's order cites, in full, Section 44-9-9(D), including that portion providing that "a court may, in its discretion, dismiss an action." In our view, this indicates the district court's awareness that any decision to grant or deny the State and County's motion would involve an exercise of discretion. On appeal, "there is a presumption of correctness in the rulings and decisions of the [district] court[,] and the party claiming error must clearly show error." *Best v. Marino*, 2017-NMCA-073, ¶ 42, 404 P.3d 450 (internal quotation marks and citation omitted). We do not presume a district court applied an incorrect standard, particularly in the absence of any evidence in the record tending to support an appellant's bald assertion that it did. *Cf. Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶ 25, 135 N.M. 641, 92 P.3d 653 (refusing to presume error on the part of the district court where the appellant had failed to show that the district court applied the wrong standard of proof). Here, Qui Tam Plaintiffs have pointed to nothing in the record indicating that the district court misapprehended the discretionary nature of a dismissal under Section 44-9-9(D). We, therefore, reject Qui Tam Plaintiffs' contention that the district court erred by interpreting Section 44-9-9(D) as an absolute bar.

## II. Whether the District Court Erred by Failing to Take Into Account the "Best Interests of the Parties and the Public Purposes Behind FATA"

**{9}** Qui Tam Plaintiffs next contend that the district court failed to "comply with" Section 44-9-5(A) when it dismissed their Complaint under Section 44-9-9(D). Section 44-9-5(A) states that "[o]nce filed, [a qui tam] action may be dismissed only with the written consent of the court, taking into account the best interest of the parties involved and the public purposes behind [FATA]." According to Qui Tam Plaintiffs, the district court "dismissed the case without taking into account the best interests of the parties involved . . . and the public purposes of the statute, such as exposing corruption by public officials like Mr. Padilla." The record does not support Qui Tam Plaintiffs' contention but rather demonstrates that the district court considered—and rejected—the "multiple advantages" that Qui Tam Plaintiffs' claimed their lawsuit afforded over the action previously brought by the County. We explain.

**{10}** Qui Tam Plaintiffs contended that the district court should not grant the motion to dismiss because their Complaint (1) offered numerous litigation advantages over the County's approach to recovering its $17 million loss, and/or (2) sought to expose public corruption and hold those engaged in public corruption accountable where the County's lawsuit did not. In urging the district court not to dismiss their Complaint, Qui Tam Plaintiffs argued that they had "brought to the table . . . a new theory, a better theory" that was "worth three times as much" as the County's lawsuit based on FATA's treble damages provision. Regarding the first contention, Qui Tam Plaintiffs argued that the multiple "advantages" offered in their FATA suit included that: Qui Tam Plaintiffs' FATA Complaint was neither removable to federal court nor subject to arbitration; Defendants were subject to treble damages, joint and several liability, attorney fees, and a civil penalty of between $5,000 and $10,000 per violation; and the FATA claims had to be

proven only by a preponderance of the evidence rather than clear and convincing evidence. As to the second contention, Qui Tam Plaintiffs noted that their lawsuit brought claims under FATA and against Padilla individually, neither of which was included in the County's lawsuit. Qui Tam Plaintiffs claimed that they "brought . . . some additional information about Mr. Padilla[,]" which should allow their FATA claims to proceed. For those two reasons, Qui Tam Plaintiffs asked the district court to deny the motion to dismiss "or hold it in abeyance and require the County and the State to take reasonable steps to preserve th[e FATA] claims, in case the [County's lawsuit] doesn't work out."

{11}    The record indicates that the district court considered each of Qui Tam Plaintiffs' arguments but ultimately was not persuaded that it should either hold the motion in abeyance or allow Qui Tam Plaintiffs' action to proceed under the facts and circumstances presented to it. The district court initially appeared receptive to Qui Tam Plaintiffs' arguments that it was in the "best interests of the public, . . . [the] County and the State" to allow their Complaint to proceed because of the financial and strategic advantages offered by FATA, particularly with respect to Qui Tam Plaintiffs' claim that their FATA lawsuit had a potential recovery of $51 million compared to a recovery of only $17 million in the County's lawsuit. On this score, the district court inquired into the damages available in the County's lawsuit and ordered the parties to submit additional briefing to "better inform[]" the court regarding what the County's lawsuit "is likely to result in" and what its "limitations are." The district court wished to be so informed to "make sure that the public interest is going to be protected and served." The State and County's supplemental brief stated that the County was pursuing not only treble damages through its Unfair Practices Act claims,[2] but also punitive damages through its common law claims. Qui Tam Plaintiffs, on the other hand, continued to assert in their supplemental brief that the County's recovery in its lawsuit was limited to $17 million while recoverable damages would be $51 million under FATA. Based on all of the information, the district court ultimately found that the County's lawsuit "was substantially similar" to Qui Tam Plaintiffs' qui tam action and concluded that the County was already pursuing the claims related to the County's $17 million loss that was also the subject of Qui Tam Plaintiffs' action.

{12}    Addressing the "additional information about Mr. Padilla" that Qui Tam Plaintiffs "brought" in support of their FATA claims, the district court noted that the "additional information" consisted of nothing more than allegations related to a single lunch meeting that Foy—at the relevant time, the vice president of finance at Security Federal Savings and Loan Association—claimed he had with Padilla somewhere between 1989 and 1992 (i.e., during Padilla's first term as Bernalillo County Treasurer) during which Padilla allegedly made an improper demand of Foy for a loan for a relative of Padilla.[3] The

2See NMSA 1978, § 57-12-10(B) (2005) (providing that "[w]here the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice").
3Qui Tam Plaintiffs alleged that, "During the lunch, after some pleasantries, Mr. Padilla stated that the reason he wanted a lending officer at the meeting was because Security Federal had refused to make a loan to Mr. Padilla's

district court found that Qui Tam Plaintiffs "fail[ed] to explain how the 23[-]year[-]old allegations have any bearing to the present case, or to the present Defendants." The court further found that with the exception of the lunch-meeting-related allegations, all of the allegations of fraud in Qui Tam Plaintiffs' Complaint "mirror[ed]" those that had already been publicly disclosed. In other words, "taking into account the . . . public purposes behind [FATA]," the district court found the "additional information" brought by Qui Tam Plaintiffs insufficient to counsel in favor of allowing the action to proceed. Section 44-9-5(A).

**{13}**    From the foregoing, it is clear that Qui Tam Plaintiffs' contention that the district court merely "rubber stamp[ed]" the State and County's motion to dismiss without regard for FATA's purpose is without merit. The fact that the district court was ultimately unconvinced by Qui Tam Plaintiffs' arguments that the best interest of the parties and the public purposes behind FATA weigh against dismissal of their Complaint and, therefore, exercised its discretion in the State and County's favor does not, without more, constitute an abuse of discretion. *See In re Camino Real Envtl. Ctr., Inc.*, 2010-NMCA-057, ¶ 23 ("When reasons both supporting and detracting from a decision exist, there is no abuse of discretion."). We, therefore, reject Qui Tam Plaintiffs' contention that the district court erred by failing to properly consider the parties' best interests or FATA's public purposes.

### III.    Whether the State and County Were Required to Intervene, Show Good Cause, and Present Evidence to Support Their Motion for the District Court to be Able to Consider and Grant the Motion to Dismiss Under Section 44-9-9(D)

**{14}**    Qui Tam Plaintiffs also argue that FATA allows the government to seek dismissal of qui tam actions "only if they (A) file a motion to intervene, (B) with a showing of good cause, [and] (C) with admissible evidentiary proof, rather than unsupported and conclusory statements[.]" Qui Tam Plaintiffs rely on Section 44-9-6 to support their contention that when the government moves for dismissal under Section 44-9-9(D), it must first satisfy other FATA provisions—in particular, Section 44-9-6(B) and (F)—before the district court may grant dismissal. Section 44-9-6 provides in pertinent part:

> B.    The state or political subdivision may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff if the qui tam plaintiff has been notified of the filing of the motion and the court has provided the qui tam plaintiff with an opportunity to oppose the motion and to present evidence at a hearing.
>
> . . . .

---

brother or brother-in-law. (Mr. Foy does not recall which, but it was a relative of Mr. Padilla's.) Mr. Padilla suggested that Security Federal should reconsider its refusal to make a loan to his relative. Mr. Padilla said that if Security Federal made the loan, he would make sure that [the] County invested money in Security Federal CDs."

F.      If the state or political subdivision elects not to proceed with the action, the qui tam plaintiff shall have the right to conduct the action. If the attorney general or political subdivision so requests, the qui tam plaintiff shall serve the attorney general or political subdivision with copies of all pleadings filed in the action and all deposition transcripts in the case, at the state's or political subdivision's expense. When the qui tam plaintiff proceeds with the action, the court, without limiting the status and rights of the qui tam plaintiff, may permit the attorney general or political subdivision to intervene at a later date upon a showing of good cause.

Qui Tam Plaintiffs attempt to import Section 44-9-6's procedural requirements and "good cause" standards into Section 44-9-9(D), contending that dismissals under Section 44-9-9(D) must satisfy the requirements of Section 44-9-6 in addition to Section 44-9-9(D)'s specific dismissal requirements.[4] Qui Tam Plaintiffs' argument runs afoul of well-established rules of statutory construction.

**{15}** "The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 (alteration, internal quotation marks, and citation omitted). We are mindful that we must "exercise caution in applying the plain meaning rule" because "[i]ts beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. Particularly when construing an individual statutory section within a comprehensive act, we must "examine the overall structure of the act and consider each section's function within the comprehensive legislative scheme." *Britton v. Office of the Attorney Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320. However, even in doing so, "[w]e will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. "In the absence of some statutory construction consideration that requires us to do so, we do not read into a statute language . . . that the Legislature has not included." *Provisional Gov't of Santa Teresa v. Doña Ana Cty. Bd. of Cty. Comm'rs*, 2018-NMCA-070, ¶ 17, 429 P.3d 981; *see Regents of the Univ. of N.M.*, 1998-NMSC-020, ¶ 28 (explaining that appellate

---

4We note that Qui Tam Plaintiffs' assertion that the government is required to support any motion to dismiss a FATA action with "admissible evidentiary proof" rests on a misreading of Section 44-9-6(B). That Section 44-9-6(B) affords qui tam plaintiffs "an opportunity to . . . present evidence" does not somehow impose on the government a corresponding obligation to present evidence in support of its motion to dismiss under Section 44-9-9(D). We note, however, that the State and County indeed offered "evidence" in the way of the 2014 news articles, of which the district court took judicial notice, to establish Section 44-9-9(D)'s threshold requirement to dismissal: that the elements of Qui Tam Plaintiffs' Complaint had been publicly disclosed.

courts "will not read into a statute . . . language which is not there, particularly if it makes sense as written" (internal quotation marks and citation omitted)). Finally, "when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." *State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659.

**{16}** As previously stated, Section 44-9-9(D), the section at issue here, provides:

> Upon motion of the attorney general or political subdivision, a court may, in its discretion, dismiss an action brought pursuant to Section 44-9-5 . . . if the elements of the alleged false or fraudulent claim have been publicly disclosed in the news media or in a publicly disseminated governmental report at the time the complaint is filed.

Plainly, Section 44-9-9(D) as written does not contain as prerequisites to dismissal that the government intervene in the action, establish good cause for dismissal, and present evidence to support its request. Qui Tam Plaintiffs would have us read into Section 44-9-9(D) requirements not only that are not there but also that we must presume the Legislature intentionally omitted. *See Jade G.*, 2007-NMSC-010, ¶ 28 (explaining that "when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional"). Qui Tam Plaintiffs do so without suggesting, much less demonstrating, that Section 44-9-9(D) does not make sense as written nor do they identify a statutory construction consideration (e.g., the need to resolve an ambiguity or a conflict between provisions) that would permit us to look to—and import—any other FATA provision(s) in order to effectuate Section 44-9-9(D)'s intent.

**{17}** FATA, while a comprehensive act whose sections are to be construed harmoniously, sets forth separate provisions that cannot be indiscriminately interchanged and imported across statutory sections as Qui Tam Plaintiffs attempt to do. Section 44-9-9(D) is a stand-alone proviso, allowing the district court, "in its discretion," to dismiss a qui tam plaintiff's FATA action if the government moves for dismissal and establishes that the elements of the qui tam plaintiff's fraud claims have been publicly disclosed. *Id.* The district court did not err by granting the State and County's motion to dismiss without first requiring the State and County to comply with Section 44-9-6's standards and requirements.

## IV. The District Court Did Not Err By "Overlooking" Section 44-9-7 in Determining Whether to Dismiss Qui Tam Plaintiffs' Complaint

**{18}** Qui Tam Plaintiffs additionally invoke another of FATA's provisions—Section 44-9-7—to support its argument that the district court erred in granting dismissal. As Qui Tam Plaintiffs frame their argument, Section 44-9-7 "deals with the present situation, where [a] qui tam plaintiff files a complaint that is based on (a) some facts that are known to the news media or government, and (b) some facts and theories that were not known." Qui Tam Plaintiffs assert that under circumstances such as those presented

here, "FATA's solution is to authorize a possible reduction in the qui tam[ plaintiff]s' statutory share" rather than bar the action from proceeding. Thus, they argue, the district court "overlooked" Section 44-9-7, leading it to misinterpret Section 44-9-9(D) and erroneously dismiss their action. Again, Qui Tam Plaintiffs offer a strained construction of FATA, this time reflecting a misunderstanding of the interplay between Section 44-9-7 and Section 44-9-9(D).

**{19}** Section 44-9-7 governs the manner in which proceeds recovered through qui tam actions are to be distributed between the qui tam plaintiff and the government. Section 44-9-7(A)(1) provides that when the government litigates the action, the qui tam plaintiff shall receive between fifteen and twenty-five percent of the proceeds recovered, "depending upon the extent to which the qui tam plaintiff substantially contributed to the prosecution of the action[.]" Section 44-9-7(A)(2) reduces the qui tam plaintiff's share to no more than ten percent of proceeds recovered in cases where "the court finds that the action was based primarily on disclosures of specific information, not provided by the qui tam plaintiff, relating to allegations or transactions . . . from the news media[.]" According to Qui Tam Plaintiffs, "Section 44-9-7 anticipates there will be cases where qui tam plaintiffs incorporate some public facts into their complaints." With this much, we agree. However, we do not agree with the conclusion Qui Tam Plaintiffs draw from this mere possibility: that the Legislature enacted Section 44-9-7's "sliding scale of rewards[,]" as they describe it, as an alternative to "barring such actions absolutely[.]" To read Section 44-9-7 as Qui Tam Plaintiffs do—i.e., as a "solution" to the "problem" of qui tam actions whose claims are based on publicly disclosed information—renders Section 44-9-9(D) superfluous. If the Legislature intended to allow all actions that incorporate publicly disclosed information to proceed and to merely limit the qui tam plaintiff's recovery in those cases, it would not have enacted Section 44-9-9(D).

**{20}** We must read Section 44-9-7 and Section 44-9-9(D) in a manner that gives effect to both provisions, which Qui Tam Plaintiffs' construction does not. *See Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260 ("When interpreting a statute, all sections of the statute must be read together so that all parts are given effect." (internal quotation marks and citation omitted)); *Blue Canyon Well Ass'n v. Jevne*, 2018-NMCA-004, ¶ 9, 410 P.3d 251 ("We interpret statutes to avoid rendering the Legislature's language superfluous." (internal quotation marks and citation omitted)). The proper way to understand Section 44-9-7 in relation to Section 44-9-9(D) is that in cases where a district court exercises its discretion under Section 44-9-9(D) and allows a qui tam action to proceed, Section 44-9-7 may serve to limit the potential recovery of the qui tam plaintiff. Section 44-9-7 in no way prohibits the district court from granting a motion to dismiss under Section 44-9-9(D).

## V. Qui Tam Plaintiffs Have Failed to Demonstrate That the District Court Abused Its Discretion in Dismissing Their Complaint

**{21}** In the absence of any indication that the district court misapprehended the applicable sections of FATA in exercising its discretion and dismissing the Complaint, we need only resolve whether the appealed ruling "exceeds the bounds of all reason or

is arbitrary, fanciful, or unreasonable." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 39, 146 N.M. 698, 213 P.3d 1127 (internal quotation marks and citation omitted). Qui Tam Plaintiffs' points on appeal fail to supply justification for reversal under this governing review standard. After conceding that the elements of their allegations of false and fraudulent claims were based on publicly disclosed information—a concession which, under the plain language of Section 44-9-9(D), triggered a dismissal option at the district court's discretion—Qui Tam Plaintiffs proffered myriad arguments below as to why the district court should allow their action to continue. The record establishes that the court simply did not find any of Qui Tam Plaintiffs' arguments persuasive. Our jurisprudence makes clear that a district court's exercise of its discretion is ill-suited for second-guessing by an appellate tribunal. Qui Tam Plaintiffs nevertheless continue to make the same arguments to this Court and ask us to reach a different conclusion. We decline to do so. *See State v. United Bonding Ins. Co.*, 1970-NMSC-017, ¶ 22, 81 N.M. 154, 464 P.2d 884 ("Absent a clear abuse of discretion, [an appellate] court cannot interpose a different result even should it have a different view of the matter.").

**{22}** The fact that the district court's ruling is one that involves matters of public interest does not compel or justify our departure from the standards that guide our review of discretionary rulings and the fact-finding that underpins them. On the record and arguments before us, we cannot say that the district court's decision to grant the motion to dismiss was clearly untenable or not justified by reason. We, therefore, affirm the district court's ruling in this instance.

**CONCLUSION**

**{23}** For the foregoing reasons, we affirm the district court's order of dismissal.

**{24} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**